VERDERY *et al.,* commissioners, *v.* WALTON.

1. So much of sections 5 and 7 of the act of 1907 (Acts 1907, p. 107) as provides for the auditing of the fees of the ordinary by the proper county officials, and the payment of such fees by the county, is not impliedly repealed by the act approved August 18, 1908 (Acts 1908, p. 70).

2. Under article 7, section 6, paragraph 2, of the constitution (Civil Code 1910, §§ 6551, 6562) a county tax can not be levied for the purpose of raising money to pay pensions to Confederate soldiers, and the widows of Confederate soldiers; the tax authorized for this purpose is one to be laid by the General Assembly over the whole State.   If the General Assembly require of a designated official that he render the necessary service to the pensioner, respecting the making of the application, col-

lecting and paying over the money, and fix a fee for such service, payable out of the county treasury, the provision as to payment of fee is unconstitutional and void, because the fee partakes of the character of the pension, and can not be constitutionally paid out of taxes levied by the county. The legislative scheme of the act of 1907, requiring payment of the ordinary's fees from the county treasury, contemplated the payment of fees for all classes of pensioners; and the legislative intent can not be given effect by enforcing the provision only in favor of indigent pensioners on the ground that a county may constitutionally levy a tax for the care of paupers.

DECEMBER 14, 1911.

Mandamus. Before Judge Hammond. Richmond superior court. May 27, 1911.

*Salem Dutcher,* for plaintiffs in error. *E. H. Callaway,* contra.

EVANS, P. J. The main point in this case is whether there existed any valid constitutional law by virtue of which the ordinary could demand payment of his fees, from county funds, for preparing the applications of those entitled to pensions at the time the services were rendered, for which compensation is demanded. Under the constitution of this State as originally adopted, the power of taxation over the whole State was given to supply soldiers, who lost a limb or limbs in the military service of the Confederate States, with substantial artificial limbs during life. The constitution was subsequently amended at various times, authorizing taxes to be levied to pay pensions for such Confederate soldiers as may have been otherwise disabled or permanently injured in such service, or who may, by reason of age and poverty, or infirmity and poverty, or blindness and poverty, be unable to provide a living for themselves; and for the widows of such Confederate soldiers as may have died in the service of the Confederate States, or since, from wounds received therein or disease contracted in the service, or by reason of age and poverty, or infirmity and poverty, or blindness and poverty, are unable to provide a living for themselves. In the various enactments to carry into effect these constitutional provisions, it was provided that blanks should be prepared and sent to the ordinary, to be filled out by applicants for pensions, and, upon proper proof being made before the ordinary of the county that the applicant was entitled to a pension, the completed application was to be forwarded to the proper authority. The ordinary was allowed a fee of one dollar for each case prepared by him, which was to be paid by the applicant. It was declared to be un-

lawful for any other person to demand, collect, or receive any fee or commission from any pension beneficiary for any service rendered in preparing and presenting an application. The amounts appropriated for pensions were payable annually. By an act approved August 22, 1907 (Acts 1907, p. 107), pensions were made payable in quarterly installments. By the 5th section of the act it was declared that the "ordinary shall be paid by his county the sum of twenty-five cents for the name of each pensioner so entered on said roll, and for receiving and paying out the money, taking receipts, and for all services rendered each pensioner in each quarter;" and by the 7th section of the act it was made the duty of those officials having in charge the auditing of the claims and accounts of each county of this State to audit and order paid the claims of the ordinary of their county, when presented, for services performed for the pensioners of their county, as required by this law, not exceeding twenty-five cents for each pensioner for each quarter. In the following year, by an act approved August 18, 1908 (Acts 1908, p. 70), it was required that pensioners be paid annually in one sum. The title of the act of 1908 is identical with that of 1907. The 3d, 4th, and 6th sections of the act of 1908 are in the same words as the corresponding sections of the act of 1907. Sections 1 and 2 of the two acts differ as to the time and mode of payment. The latter part of section 5 of the act of 1907, providing that the county shall pay the fees of the ordinary, is omitted from the act of 1908, and section 7 of the act of 1907, requiring the proper county officers to audit the claims of the ordinary for services performed for pensioners, is also omitted from the act of 1908. The question is raised whether the provision for the payment of the ordinary's fees by the county, as provided in the act of 1907, is impliedly repealed by the act of 1908. The argument advanced to support this position is that the act of 1907 was a general act dealing exhaustively with the subject of the payment of pensions, and the subsequent act of 1908 was a general act dealing with the same subject, but in a different manner in several particulars from the first act, so as to indicate a plain legislative intent that the later act was to be substituted for the former, and to embrace the sole law on the subject. An act which does not purport to amend or repeal any particular law is not within the constitutional provision that no law shall be amended or repealed by mere reference to

.its title, but that the amending or repealing act shall distinctly describe the law to be amended or repealed, as well as the alteration to be made. *Peed* v. *McCrary,* 94 *Ga.* 487 (21 S. E. 232). 'Repeals by implication are not favored; and it is only in so far as the statute is clearly repugnant to a former statute, or is manifestly intended to cover the subject-matter of the former, and operate as a.substitute for it, that such a repeal will be held to result. *Johnson* v. *Southern Mutual Building & Loan Asso.,* 97 *Ga.* 622 (25 S. E. 358).

The first of these acts not only wrought. a change in the law as to the time and manner of the payment of pensions, but also imposed for the first time upon the counties a charge for the payment of the ordinary's fees for the services rendered in the collection of the pensions. The later act made no reference to the former act, and only purported to change the time and manner of the payment of pensions. Although no reference was made to the act of 1907, it is clear that the act of 1908 is to be construed in connection therewith, and to be given effect only on those matters dealt with in the later act. It did not purport to repeal the provision for the payment of ordinary's fees by the county; and as that was an important feature in the first act, we can not say that the legislature intended to repeal that important provision in the law on the subject of the payment of the ordinary's fees. That which was left in the act of 1907 applied solely to the payment of the ordinary's fees. It could have been made the subject-matter of a complete and independent act. We think, therefore, that the provision with reference to the payment of the fees of the ordinary for services rendered to pensioners was not impliedly repealed by the act of 1908.

May the legislature constitutionally enact a law imposing upon a county the duty of paying the fees for services rendered by the ordinary to pensioners? The constitutional scheme of taxation contemplates a separation of the taxing power of the State from that of the county. It is declared in article 7, section 1, paragraph 1, of the constitution, that "the powers of taxation over the whole State shall be exercised by the General Assembly for the following purposes only:" for the support of the State government and the public institutions; for educational purposes; to pay the principal and interest on the public debt; to suppress insurrection, to repel

invasion, and to defend the State in time of war, and to supply Confederate soldiers with artificial limbs, and for pensions to Confederate soldiers, and widows of Confederate soldiers. Civil Code (1910), § 6551. By article 7, section 6, paragraph 2, the General Assembly was prohibited from delegating to any county the right to levy a tax for any purpose, except for educational purposes; to build and repair public buildings and bridges; to maintain and support prisoners; to pay jurors and coroners; for litigation, quarantine, roads, and expenses of courts; to support paupers, and pay existing debts; pay county police, and provide for necessary sanitation. Civil Code (1910), § 6562. The General Assembly has and exercises the power of providing by State taxation for the payment of pensions to Confederate soldiers, and can confer no authority for paying pensions to soldiers and their widows out of the funds to be raised by county taxation. *Elder* v. *Collier,* 100 *Ga.* 342 (28 S. E. 116). The costs and fees incident to the collection of pensions, when added to the bounty appropriated for pensions, partake of the character of the pension. It amounts to an appropriation of an additional sum, whereby the pensioner is relieved of all costs in securing his pension. It is therefore clear that as the county can not constitutionally levy a tax to pay the pension, it can not levy a tax to pay the costs of securing the pension so that the State's appropriation may be net to the pensioner; and the act of 1907, which makes this a charge upon the county taxes, is unconstitutional and void.

But it is contended, that, inasmuch as some of the pensioners are entitled to their bounty by reason of age and poverty, or infirmity and poverty, or blindness and poverty, rendering them unable to provide a living for themselves, it is proper for the General Assembly to classify them as paupers, and provide for the payment of the fees of the ordinary from the pauper funds of the county. The legislative scheme was to treat all pensioners alike, and to make no exception in favor of any class of pensioners; and even if it be conceded that the legislature would have the right to make such classification, it has not done so. To recognize such an exception to the legislative enactment would be not only to give a partial effect to the legislative scheme, but to impute to that body an intention to create an invidious distinction by classifying indigent pensioners as paupers, when no such classification was intended.

We, therefore, are of the opinion that the provision in the act of 1907 that the ordinary's fees in preparing and collecting pensions shall be paid by the county of the pensioner's residence is violative of the constitution.

Applying these principles to the case in hand, which was an application for mandamus by the ordinary to require the county commissioners to audit his claim for fees in services rendered to indigent pensioners under the act of 1907, the mandamus should have been refused.

*Judgment reversed. All the Justices concur, except Hill, J., not presiding.*