## CLARK *v.* WALTON.

1. Confederate soldiers, referred to in the expression "indigent pensioners," as used in section 2 of an act approved August 13, 1909 (Acts 1909, p. 173), can not be classed as paupers, in the meaning of that term where it is employed in our statutes relating to the county poor.
2. Under the decision in the case of *Verdery* v. *Walton*, ante, 213 (73 S. E. 390), the provision in section 2 of the act referred to in the first head-note is unconstitutional, in so far as it provides for the payment of certain fees to the ordinaries of this State out of the pauper funds of their respective counties.
3. The court erred in not sustaining the demurrer to the petition for mandamus, the demurrer being based upon the alleged unconstitutionality of the section of the act referred to.

DECEMBER 15, 1911.

Mandamus. Before Judge Hammond. Richmond superior court. May 27, 1911.

*Salem Dutcher,* for plaintiff in error. *E. H. Callaway,* contra.

BECK, J. Walton, ordinary of Richmond county, brought mandamus proceedings against Clark, county treasurer, to compel the auditing and payment, out of the pauper fund of the county, of an itemized bill of the former for his services in preparing all papers and proofs, and preparing the annual pay-rolls, and for securing and paying out the pensions paid by the State to indigent pensioners of said county, at $1 per capita, for all pensioners that have heretofore been known as indigent pensioners. A demurrer filed by the respondent was overruled, and the mandamus was made absolute; to which ruling of the court respondent excepted.

In the case of *Verdery* v. *Walton*, ante, 213 (73 S. E. 390), it was said: "May the legislature constitutionally enact a law imposing upon a county the duty of paying the fees for services rendered by the ordinary to pensioners? The constitutional scheme of taxation contemplates a separation of the taxing power of the State from that of the county. It is declared in article 7, section 1, paragraph 1, of the constitution, that ' The powers of taxation over the whole State shall be exercised by the General Assembly for the following purposes only:' for the support of the State government and the public institutions; for educational purposes; to pay the principal and interest on the public debt; to suppress insurrection, to repel invasion, and to defend the State in time of war; and to supply Confederate soldiers with artificial limbs, and for pensions to Confederate soldiers and widows of Confederate soldiers. Civil Code

(1910), § 6551. By article 7, section 6, paragraph 2, the General Assembly was prohibited from delegating to any county the right to levy a tax for any purpose, except for educational purposes; to build and repair public buildings and bridges; to maintain and support prisoners; to pay jurors and coroners; for litigation, quarantine, roads, and expenses of courts; to support paupers, and pay existing debts; pay county police, and provide for necessary sanitation. Civil Code (1910), § 6562. The General Assembly has and exercises the power of providing by State taxation for the payment of pensions to Confederate soldiers, and can confer no authority for paying pensions to soldiers and their widows out of the funds to be raised by county taxation. *Elder* v. *Collier,* 100 *Ga.* 342 (28 S. E. 116). The costs and fees incident to the collection of pensions, when added to the bounty appropriated for pensions, partake of the character of the pension. It amounts to an appropriation of an additional sum, whereby the pensioner is relieved of all costs in securing his pension. It is therefore clear that as the county can not constitutionally levy a tax to pay the pension, it can not levy a tax to pay the costs of securing the pension so that the State's appropriation may be net to the pensioner; and the act of 1907, which makes this a charge upon the county taxes, is unconstitutional and void.

"But it is contended, that, inasmuch as some of the pensioners are entitled to their bounty by reason of age and poverty, or infirmity and poverty, or blindness and poverty, rendering them unable to provide a living for themselves, it is proper for the General Assembly to classify them as paupers, and provide for the payment of the fees of the ordinary from the pauper funds of the county."

That decision is controlling in the instant case, unless indigent pensioners, as used in section 2 of an act relating to compensation for services to pensioners by ordinaries, approved August 13, 1909 (Acts 1909, p. 173), fall properly within the purview of the provision in the constitution authorizing the General Assembly to delegate to the county authorities the right to levy a tax "to support paupers." The second section of the act referred to reads as follows: "Sec. 2. Be it further enacted by the authority aforesaid, that the fees above set out for all those pensioners that have heretofore been known as indigent pensioners shall be paid out of the pauper fund of the county in which said pensioner may reside, upon

a sworn itemized bill made out by the ordinaries and presented to the treasurer or other officer having in charge the paying out of the pauper fund of each county, which treasurer or other officer shall audit said itemized bill, and, if found correct, pay the same and make record thereof as other bills or orders paid by him." Indigent pensioners include those Confederate soldiers who from age and poverty, or infirmity and poverty, or blindness and poverty, are entitled to a pension. In considering whether those pensioners embraced in the expression, "indigent pensioners," fall within the purview of the constitutional provision above referred to and the statutes relating to the support of paupers and the levying of a tax for their support by the counties, it is necessary to determine the meaning of the word "pauper," as employed in the constitution; and in doing this, as the framers of the constitution did not attempt to limit or define the term "pauper," to gather the meaning of the word as it stood in our laws at the time of the adoption of the constitution. Under the laws of this State of force at that time, the supervision of all paupers was vested in the ordinary of each county. Civil Code (1910), § 541 (Code of 1873, § 754). That officer had authority to make all necessary contracts in relation to the county poor, and had authority to purchase a poor-house and a farm, upon which he might require all paupers in the county to labor who were not, from old age or disease, unable to work. Civil Code (1910), §§ 542, 543 (Code of 1873, §§ 755, 756). It was further provided that no person should be entitled to the benefits of the provision for the poor who was able to maintain himself or herself by labor, or, if not, had sufficient means to maintain himself. Civil Code (1910), § 553 (Code of 1873, § 763). It was also in contemplation of the law that one desirous of sharing the provision for the county poor should make "application to be provided for as a pauper to the commissioner of the poor or the ordinary, upon which a hearing must be had." Civil Code (1910), § 552 (Code of 1873, § 762). Evidently, in these sections, only those persons in any particular county who were completely destitute were included among those designated as paupers. They were the poor who were chargeable to the county in which they had their residence. And we do not think that a Confederate soldier, in order to be classed as an indigent pensioner and to enjoy the bounty of the State as such, must necessarily be in this extreme

condition of destitution, be under the supervision of the ordinary, as provided in the case of paupers, and be required to make application for maintenance as a pauper. True, it is contemplated in our law that some of the indigent pensioners may be in such a state of destitution as would authorize their classification under the head of paupers. But what we are pointing out is, that the mere fact of a Confederate soldier being rightfully on the roll of indigent pensioners would not of. itself place him among the county poor entitled to support as a pauper. This is more clearly shown by a consideration of the provisions of another section of the code relating to paupers who are chargeable to the county, under the provisions of which parent and children are bound to support each other; and if a person had a parent or a child who was able to support him, he was not chargeable to the county; and if the county did maintain him, such county might recover the expense of his maintenance from the parent or the child whose duty it was to support him. Civil Code (1910), § 554 (Code of 1873, § 764). In other words, one having a parent or child able to support him is not, under our law now or as it stood at the time of the adoption of the constitution, a "pauper." But it could not be contended that a Confederate soldier who, from age and poverty, or infirmity and poverty, or blindness and poverty, is unable to provide a living for himself would not be entitled to a place on the roll of indigent pensioners, although he had a parent or child able and willing to support him.

Upon these considerations we must hold that "indigent pensioners" as a class do not come within the purview of our statutes making provision for the maintenance of paupers. And consequently, under the decision in the case of *Verdery* v. *Walton,* cited above, the court erred in overruling the demurrer to the petition for mandamus against the treasurer.

*Judgment reversed. All the Justices concur, except Hill, J., not presiding.*