Leon D. Lazer, J.
This application by the Brunswick Hospital Center for an order authorizing a qualified physician from the hospital to perform a blood transfusion on the respondent Kathleen Melideo, if necessary, is denied.
The application relates to a 23-year-old childless (and non-pregnant) married woman upon whom a diagnostic dilatation and curettage was performed on December 3, 1976. Twenty-four hours after the operative procedure, she developed a uterine hemmorhage as a result of which her hemoglobin count was reduced from 13 grams to 5.8 grams and she has developed anemia. The respondent and her husband are members of the Jehovah’s Witnesses religious sect and both have signed documents indicating their refusal to permit a blood transfusion. In response to a question from the court, the hospital attorney declared that there was no question of respondent’s competence to make the decision.
The application seeks authority to perform the blood transfusion or any other surgery required to save the life or protect the health of the respondent if necessary in the opinion of a qualified physician. According to the testimony of respondent’s gynecologist, should the respondent suffer stress or infection during her recovery period of about two weeks, she may be thrown into cardiac failure or she may suffer irreversible brain damage unless she is transfused.
*975 Both the respondent and her husband were served with the application and no appearance was made on their behalf in this proceeding. The husband did leave a telephone message with the clerk of the court to the effect that he was on his way to the hospital, would not be attending court, and was leaving the matter "in the hands of the Judge.”
As a general rule, every human being of adult years and sound mind has a right to determine what shall be done with his own body and cannot be subjected to medical treatment without his consent (Schloendorff v Society of N. Y. Hosp., 211 NY 125; see Matter of Erickson v Dilgard, 44 Misc 2d 27). Specifically, where there is no compelling State interest which justifies overriding an adult patient’s decision not to receive blood transfusions because of religious beliefs, such transfusions should not be ordered (see Matter of Osborne, 294 A2d 372 [Dist Col App]; cf. Matter of Estate of Brooks, 32 Ill 2d 361). Such an order would constitute a violation of the First Amendment’s freedom of exercise clause (Holmes v Silver Cross Hosp., 340 F Supp 125).
However, judicial power to order compulsory medical treatment over an adult patient’s objection exists in some situations (see Ann., 9 ALR3d 1391). It may be the duty of the court to assume the responsibility of guardianship for a patient who is not compos mentis to the extent of authorizing treatment necessary to save his life even though the medical treatment authorized may be contrary to the patient’s religious beliefs (Application of President & Directors of Georgetown Coll, 331 F2d 1000, reh den 331 F2d 1010, cert den 377 US 978; John F. Kennedy Mem. Hosp. v Heston, 58 NJ 576). Furthermore, the State’s interest, as parens patriae, in the welfare of children may justify compulsory medical care where necessary to save the life of the mother of young children (Application of President & Directors of Georgetown Coll., supra) or of a pregnant woman (Raleigh Fitkin-Paul Morgan Mem. Hosp. v Anderson, 42 NJ 421, cert den 377 US 985).
In the instant case, however, the patient is ful|y competent, is not pregnant, and has no children. Her refusal to submit to a blood transfusion, even though it may be necessary to save her life, must be upheld.