### 37244. JEFFERSON v. GRIFFIN SPALDING COUNTY HOSPITAL AUTHORITY et al.
### IN THE INTEREST OF JOHN OR MARY DOE, A THIRTY-NINE WEEK OLD UNBORN CHILD.

PER CURIAM.

On Thursday, January 22, 1981, the Griffin Spalding County Hospital Authority petitioned the Superior Court of Butts County, as a court of equity, for an order authorizing it to perform a caesarean section and any necessary blood transfusions upon the defendant, an out-patient resident of Butts County, in the event she presented herself to the hospital for delivery of her unborn child, which was due on or about Monday, January 26. The superior court conducted an emergency hearing on Thursday, January 22, and entered the following order:

"This petition and rule nisi were filed and served on defendant today. When the Court convened at the appointed hour, defendant did not appear, in spite of the fact that both she and her husband had notice of the hearing.

"Defendant is in the thirty-ninth week of pregnancy. In the past few weeks she has presented herself to Griffin Spalding County Hospital for pre-natal care. The examining physician has found and defendant has been advised that she has a complete placenta previa; that the afterbirth is between the baby and the birth canal; that it is virtually impossible that this condition will correct itself prior to delivery; and that it is a 99% certainty that the child cannot survive natural childbirth (vaginal delivery). The chances of defendant surviving vaginal delivery are no better than 50%.

"The examining physician is of the opinion that a delivery by caesarean section prior to labor beginning would have an almost 100% chance of preserving the life of the child, along with that of defendant.

"On the basis of religious beliefs, defendant has advised the Hospital that she does not need surgical removal of the child and will not submit to it. Further, she refuses to take any transfusion of blood.

"The Hospital is required by its own policies to treat any patient seeking emergency treatment. It seeks authority of the Court to administer medical treatment to defendant to save the life of herself and her unborn child.

"The child is, as a matter of fact, viable and fully capable of sustaining life independent of the mother (defendant). The issue is whether this unborn child has any legal right to the protection of the Court.

"To abort this child would be a criminal offense in Georgia. Ga. Code Ann., §§ 26-1201; 26-1202. A viable unborn child has the right under the U. S. Constitution to the protection of the State through such statutes prohibiting the arbitrary termination of the life of an unborn fetus. Roe v. Wade, 410 U. S. 113 (93 SC 705, 732, 35 LE2d 147) (1973).

"Because the life of defendant and of the unborn child are, at the moment, inseparable, the Court deems it appropriate to infringe upon the wishes of the mother to the extent it is necessary to give the child an opportunity to live.

"Accordingly, the plaintiff hospitals are hereby authorized to administer to defendant all medical procedures deemed necessary by the attending physician to preserve the life of defendant's unborn child. This authority shall be effective only if defendant voluntarily seeks admission to either of plaintiff's hospitals for the emergency delivery of the child.

"The Court has been requested to order defendant to submit to surgery before the natural childbirth process (labor) begins. The Court is reluctant to grant this request and does not do so at this time. However, should some agency of the State seek such relief through intervention in this suit or in a separate proceeding, the Court will promptly consider such request."

On Friday, January 23, the Georgia Department of Human Resources, acting through the Butts County Department of Family and Children Services, petitioned the Juvenile Court of Butts County for temporary custody of the unborn child, alleging that the child was a deprived child without proper parental care necessary for his or her physical health (see Code Ann. § 24A-401 (h) (1)), and praying for an order requiring the mother to submit to a caesarean section. After appointing counsel for the parents and for the child, the court conducted a joint hearing in both the superior court and juvenile court cases and entered the following order on the afternoon of January 23:

"This action in the Superior Court of Butts County was heard and decided yesterday, January 22, 1981.

"This morning, the Georgia Department of Human Resources, acting through the Butts County Department of Family and Children Services, filed a complaint in the Juvenile Court of Butts County alleging deprivation and seeking temporary custody of Jessie Mae Jefferson's unborn child.

"Because of the unusual nature of the relief sought in these cases and because the Juvenile Court of Butts County may not have the authority needed effectively to grant the relief sought, the Court consolidates these cases and renders the following judgment both as a Juvenile Court and under the broad powers of the Superior Court of Butts County. The Court readopts its findings contained in the Order dated January 22, 1981.

"At the proceeding held today, Jessie Mae Jefferson and her husband, John W. Jefferson, were present and represented by counsel, Hugh Glidewell, Jr., Richard Milam, Attorney at Law, represented the interests of the unborn child.

"Based on the evidence presented, the Court finds that Jessie Mae Jefferson is due to begin labor at any moment. There is a 99 to 100 percent certainty that the unborn child will die if she attempts to have the child by vaginal delivery. There is a 99 to 100 percent chance that the child will live if the baby is delivered by Caesarean section prior to the beginning of labor. There is a 50 percent chance that Mrs. Jefferson herself will die if vaginal delivery is attempted. There is an almost 100 percent chance that Mrs. Jefferson will survive if a delivery by Caeserean section is done prior to the beginning of labor. The Court finds that as a matter of fact the child is a human being fully capable of sustaining life independent of the mother.

"Mrs. Jefferson and her husband have refused and continue to refuse to give consent to a Caeserean section. This refusal is based entirely on the religious beliefs of Mr. and Mrs. Jefferson. They are of the view that the Lord has healed her body and that whatever happens to the child will be the Lord's will.

"Based on these findings, the Court concludes and finds as a matter of law that this child is a viable human being and entitled to the protection of the Juvenile Court Code of Georgia. The Court concludes that this child is without the proper parental care and subsistence necessary for his or her physical life and health.

"Temporary custody of the unborn child is hereby granted to the State of Georgia Department of Human Resources and the Butts County Department of Family and Children Services. The Department shall have full authority to make all decisions, including giving consent to the surgical delivery appertaining to the birth of this child. The temporary custody of the Department shall terminate when the child has been successfully brought from its mother's body into the world or until the child dies, whichever shall happen.

"Because of the unique nature of these cases, the powers of the Superior Court of Butts County are invoked and the defendant, Jessie Mae Jefferson, is hereby Ordered to submit to a sonogram (ultrasound) at the Griffin Spalding County Hospital or some other

place which may be chosen by her where such procedure can be given. Should said sonogram indicate to the attending physician that the complete placenta previa is still blocking the child's passage into this world, Jessie Mae Jefferson, is Ordered to submit to a Caeserean section and related procedures considered necessary by the attending physician to sustain the life of this child.

"The Court finds that the State has an interest in the life of this unborn, living human being. The Court finds that the intrusion involved into the life of Jessie Mae Jefferson and her husband, John W. Jefferson, is outweighed by the duty of the State to protect a living, unborn human being from meeting his or her death before being given the opportunity to live.

"This Order shall be effective at 10:00 a.m. on Saturday, January 24, 1981, unless a stay is granted by the Supreme Court of Georgia or some other Court having the authority to stay an Order of this Court."

The parents filed their motion for stay in this court at about 5:30 p.m. on January 23 and after hearing oral argument from the attorneys for the parents, the child, the Department of Human Resources and the Butts County Department of Family and Children's Services, and after considering additional authorities located by our law assistants, this court entered the following order on the evening of January 23:

"It is ordered that the Motion for Stay filed in this matter is hereby denied. The trial court's orders are effective immediately. Roe v. Wade, 410 U. S. 113 (93 SC 705, 35 LE2d 147) (1973); Raleigh Fitkin-Paul Morgan Memorial Hospital v. Anderson, 42 N. J. 421, 201 A2d 537, cert. den. 377 U. S. 985 (1964); Strunk v. Strunk, Ky., 445 SW2d 145 (1969)."

*Motion for stay denied. All the Justices concur.*

DECIDED FEBRUARY 3, 1981.

*Hugh Glidewell, Jr.,* for appellants.

*Arthur K. Bolton, Attorney General, Carol A. Cosgrove, Assistant Attorney General, Eugene W. Dabbs, IV, Special Assistant Attorney General, Richard Milam,* for appellee.

HILL, Presiding Justice, concurring.

The power of a court to order a competent adult to submit to surgery is exceedingly limited. Indeed, until this unique case arose, I would have thought such power to be nonexistent. Research shows that the courts generally have held that a competent adult has the

right to refuse necessary lifesaving surgery and medical treatment (i.e., has the right to die) where no state interest other than saving the life of the patient is involved. Annot., Patient's Right to Refuse Treatment, 93 ALR3d 67, § 3 (1979).

On the other hand, one court has held that an expectant mother in the last weeks of pregnancy lacks the right to refuse necessary lifesaving surgery and medical treatment where the life of the unborn child is at stake. Raleigh Fitkin-Paul Morgan Memorial Hospital v. Anderson, supra; see also In the Matter of Melideo, 390 NYS2d 523 (88 Misc. 2d 974) (1976); Re Yetter, 62 Pa. D&C2d 619, 623 (1973).

The Supreme Court has recognized that the state has an interest in protecting the lives of unborn, viable children (viability usually occurring at about 7 months, or 28 weeks). Roe v. Wade, 410 U. S. 113, 160, 164-165 (93 SC 705, 730, 732, 35 LE2d 147) (1973).

The mother here was in her last week of normal pregnancy (the 39th week). She had diligently sought prenatal care for her child and herself, except for her refusal to consent to a caesarean section. She was due to deliver on Monday, January 26, and the medical testimony showed that the birth could occur at any time within 2 weeks of that date. The medical testimony showed further that the child's chances for survival decreased once labor commenced and that a 30 minute delay after bleeding commenced could be fatal to the child.

In denying the stay of the trial court's order and thereby clearing the way for immediate reexamination by sonogram and probably for surgery, we weighed the right of the mother to practice her religion and to refuse surgery on herself, against her unborn child's right to live. We found in favor of her child's right to live.

Although we are not called upon here to decide whether the intervention of the juvenile court was necessary, I for one approve the trial court's action in exercising jurisdiction over the unborn child as juvenile judge and over the mother as judge of a court of equity. According to the testimony, this child was facing almost certain death, and was being deprived of the opportunity to live. For this reason, Code Ann. § 24A-401 (h) (5) is inapplicable.[1]

I am authorized to state that Justice Marshall joins in this concurring opinion.

---

[1] According to newspaper reports, ". . . a third ultrasound test performed Friday night showed the placenta had moved — a most unusual occurrence . . ." Atlanta Journal/Constitution, January 25, 1981.

SMITH, Justice, concurring.

1. "The free exercise of religion is, of course, one of our most precious freedoms . . . The courts have, however, drawn a distinction between the free exercise of religious belief which is constitutionally protected against any infringement and religious practices that are inimical or detrimental to public health or welfare which are not (Reynolds v. United States, 98 U. S. 145, 25 L.Ed. 244; Davis v. Beason, 133 U. S. 333, 10 S.Ct. 299, 33 L.Ed. 637)." In the Matter of Sampson, 317 NYS2d 641, 649 (1970). As stated in Cantwell v. Connecticut, 310 U. S. 296, 303-304 (60 SC 900, 84 LE 1213) (1940): "The [First] Amendment embraces two concepts, — freedom to believe and freedom to act. The first is absolute but, in the nature of things, the second cannot be. Conduct remains subject to regulation for the protection of society."

Nevertheless, the power of the state to restrict conduct based on religious belief is by no means absolute. "[H]owever compelling, a purpose approximately attainable without burdening religion must be pursued along that path. But there are numerous situations in which no such less restrictive path exists." Tribe, American Constitutional Law, § 14-10, pp. 849-850. "Suppose one believed that human sacrifices were a necessary part of religious worship, would it be seriously contended that the civil government under which he lived could not interfere to prevent a sacrifice?" Reynolds v. United States, supra at 166.

In the instant case, it appears that there is no less burdensome alternative for preserving the life of a fully developed fetus than requiring its mother to undergo surgery against her religious convictions. Such an intrusion by the state would be extraordinary, presenting some medical risk to both the mother and the fetus. However, the state's compelling interest in preserving the life of this fetus is beyond dispute. See Roe v. Wade, supra; Code § 26-1202 et seq. Moreover, the medical evidence indicates that the risk to the fetus *and* the mother presented by a Caesarean section would be minimal, whereas, in the absence of surgery, the fetus would almost certainly die and the mother's chance of survival would be no better than 50 percent. Under these circumstances, I must conclude that the trial court's order is not violative of the First Amendment, notwithstanding that it may require the mother to submit to surgery against her religious beliefs. See Raleigh Fitkin-Paul Morgan Memorial Hospital v. Anderson, supra; see also In re Green, 448 Pa. 338 (292 A2d 387) (1972).

2. We deal here with an apparent life and death emergency; questions relating to the jurisdiction of the lower court are not our primary concern.

Code § 24A-301 sets forth the jurisdiction of the juvenile courts. It provides in pertinent part: "(a) The court shall have exclusive original jurisdiction over *juvenile* matters and shall be the sole court for initiating action: (1) Concerning any *child* . . . (C) Who is alleged to be deprived . . ." (Emphasis supplied.) Code § 24A-401 defines the term "child" as "any individual under the age of 17 years." I believe the legislature intended that the juvenile courts exercise jurisdiction only where a child has seen the light of day.[1] I am aware of no "child deprivation" proceeding wherein the "child" was unborn. See *Patty v. Dept. of Human Resources,* 154 Ga. App. 455 (269 SE2d 30) (1980).

This is a case of first impression, and the trial court, in an attempt to cover all possible ground, rendered its judgment "both as a Juvenile Court and under the broad powers of the Superior Court of Butts County." As the trial court's action was a proper exercise of its equitable jurisdiction with respect to both the mother and the fetus (see Raleigh Fitkin-Paul Morgan Memorial Hospital v. Anderson, supra), and its decision on the merits a correct one, I fully concur in the denial of appellant's motion for stay. "A judgment correct for any reason will be affirmed. [Cits.]" *McLean v. McLean,* 242 Ga. 71, 72 (247 SE2d 867) (1978).

---

[1] What is the "age" of a fetus? Does the instant case present a "juvenile matter"? Code § 102-102 (1) provides: "The ordinary signification shall be applied to all words, except words of art, or words connected with a particular trade or subect-matter, when they shall have the signification attached to them by experts in such trade, or with reference to such subject matter." See *State of Ga. v. Brantley,* 147 Ga. App. 569, 570 (249 SE2d 365) (1978); see also Keeler v. Superior Court of Amador County, 2 Cal3d 619 (87 Cal. Rptr. 481, 470 P2d 617) (1970).