40588. FULTON-DeKALB HOSPITAL AUTHORITY v. GRAVES et al.

CLARKE, Justice.
Before the court is a case of first impression in this state which presents two questions: (1) Whether Georgia will recognize a cause of

action for wrongful pregnancy or wrongful conception and, if so, (2) whether the damages recoverable include the cost of rearing and educating the child. This is not one of those cases which involves foreseeability of the possible birth of a child with a birth defect or other congenital ailment. Therefore, we cannot here reach the issue of measure of damages in such a case.

Plaintiff Claudia Mae Graves, appellee here, gave birth to a child in 1979. Following the delivery, a sterilization procedure was performed upon her by a staff physician of defendant hospital. Subsequently she gave birth to a child with a "club foot." Ms. Graves sued defendant hospital for negligence and for fraudulent misrepresentation. The trial court granted partial summary judgment to defendant on the question of consent. The trial court denied summary judgment to defendant on defendant's contention that no cause of action exists in Georgia for wrongful pregnancy and, if such cause of action does exist, the measure of damages is pecuniary expenses as a direct result of the birth. Defendant appeals the denial of summary judgment. We affirm in part and reverse in part.

Because of the unique division of opinions among the members of the court, we are indicating the position of the court in each of the three divisions of this opinion.

1. Although there is great confusion in the use of the terms wrongful pregnancy, wrongful conception, wrongful birth, and wrongful life, we will refer to wrongful pregnancy or wrongful conception actions as those brought by the parents of a child whose conception or birth was due to the negligence of a physician in performing a sterilization or abortion. An action brought by a child against the parents or physician on the theory that because of his illegitimacy or birth defects he would have been better not born has found almost no support in the law. However, most jurisdictions now allow an action by parents against the physician for wrongful pregnancy or wrongful conception. Ann., Tort Liability for Wrongfully Causing One to Be Born, 83 ALR3d 15.

The United States Supreme Court in Roe v. Wade, 410 U. S. 113 (93 SC 705, 35 LE2d 147) (1973), and Griswold v. Connecticut, 381 U. S. 479 (85 SC 1678, 14 LE2d 510) (1965), has recognized that a woman has the right to plan the size of her family. Various arguments based on policy as well as practical considerations have been raised against a cause of action for wrongful pregnancy or wrongful conception. It has been suggested that recognition of such a cause of action would open the door to fraudulent claims, that the injury is remote from the negligence, that recovery would be out of proportion to the defendant's culpability. But these same arguments have been made

in connection with countless other tort claims, and the problems presented have been dealt with in the course of traditional tort litigation. Note, "Wrongful Birth: A Child of Tort Comes of Age," 50 U. Cin. L. Rev. 65 (1981).

With this background, we address the first question before us and find no reason why an action for wrongful pregnancy or wrongful conception should not be recognized in Georgia. Such an action is no more than a species of malpractice which allows recovery from a tortfeasor in the presence of an injury caused by intentional or negligent conduct.

All the Justices concur with Division One, except Marshall, P. J., and Bell, J., who dissent.

2. The more difficult question is the measure of damages. The vast majority of courts allow recovery of expenses for the unsuccessful medical procedure which led to conception or pregnancy, for pain and suffering, medical complications, costs of delivery, lost wages, and loss of consortium. Cockrum v. Baumgartner, 95 Ill. 2d 193, (447 NE2d 385) cert. den. sub nom. Raja v. Michael Reese Hosp. & Med. Center, —— U. S. —— (104 SC 149, 78 LE2d 139) (1983). These damages are consistent with the damages which may be recovered in any malpractice case and represent no real deviation from traditional tort remedies. We hold that these damages are subject to recovery.

All the Justices concur with Division Two, except Marshall, P. J., and Bell, J., who dissent.

3. The issue of recovery for the cost of rearing of the child raises questions not so easily answered by the application of logic or reliance upon legal precedent. In evaluating a claim for the cost of rearing a child we must consider the value which our society places upon human life in general and on the lives of children in particular. We instinctively recoil from the notion that parents may suffer a compensable injury on the birth of a child. In University of Arizona Health Sciences Center v. Superior Court of State of Arizona, County of Maricopa, 136 Ariz. 579 (667 P2d 1294) (1983), the Supreme Court of Arizona concluded, ". . . we believe our function is to leave the emotion and sentiment to others and attempt to examine the problem with logic and by application of the relevant principles of law." Id. at 1298-99. With all respect, we do not agree that a strict application of principles of law will suffice to resolve the complicated questions that arise when the advance of science outstrips the development of ethical considerations. This is not to say that we may lapse into sentimentality or embrace a maudlin picture of home and family, ignoring often harsh realities. Rather, we must strive to bring

the full creativity of the law to bear upon these serious questions.

Many of the same arguments marshalled against the cause of action in general have been propounded against cost of rearing the child as an element of damages. See, e.g., White v. United States, 510 FSupp. 146 (D. Kansas 1981) (construing Georgia law). However, a minority of jurisdictions allows recovery of the expense of child rearing. Of these, only one, Ohio, allows recovery with no offset for the benefit derived from the society and comfort provided by the child. See Bowman v. Davis, 48 Ohio St. 2d 41 (356 NE2d 496) (1976). Jurisdictions which allow recovery of the expense of raising a healthy child have generally resolved the very troubling question of the extent of injury by an application of a benefits rule relying on Restatement of Torts, Second, § 920. This approach has been criticized because the benefit rule of the Restatement contemplates a benefit to the same interest of plaintiff which was harmed. Since injury generally claimed is economic, the benefit of love and companionship arguably does not go to the same interest. Note, "Judicial Limitations on Damages Recoverable for the Wrongful Birth of a Healthy Infant," 68 Va. L. Rev. 1311 (1982).

We agree that the economic consequences attendant to the birth and rearing of a child are burdens which differ in species from the benefits which flow from joys a child brings to a family. Use of the offset provided by the benefit rule appears to be an attempt to apply the theory of consequential damages and consequential benefits to human life and parenthood. We are not willing to impose such a theory in this area of delicate human relations. Therefore, the offset provided by the benefit rule does not reconcile the need to devise an adequate remedy with the policy considerations which militate against allowing compensation for child rearing expenses.

Having carefully considered the views of the courts which have wrestled with the issue of the damages for the wrongful pregnancy or wrongful conception, we conclude that the cost of raising a child cannot be recovered. As the court in Cockrum v. Baumgartner, supra, noted, "One can, of course, in mechanical logic reach a different conclusion, but only on the ground that human life and the state of parenthood are compensable losses. In a proper hierarchy of values the benefit of life should not be outweighed by the expense of supporting it. Respect for life and the rights proceeding from it are at the heart of our legal system and, broader still, our civilization." Id. at 389. The soundness of a rule denying recovery for the cost of raising a child lies in that, given the values cherished by our society, a parent cannot be said to have suffered an injury in the birth of a child. See Public Health Trust v. Brown, 388 S2d 1084 (Fla. 1980). See also

Weintraub v. Brown, 10 Family Law Reporter 1193 (N. Y. 1983).

All the Justices concur with Division Three, except Smith and Gregory, JJ., who dissent.

*Judgment affirmed in part; reversed in part. All the Justices concur, except Marshall, P. J., and Bell, J., who dissent from Divisions 1 and 2, and Smith and Gregory, JJ., who dissent from Division 3.*

DECIDED APRIL 17, 1984.

*Alston & Bird, Earle B. May, Jr., Bernard Taylor, G. Conley Ingram,* for appellant.

*Robert L. Littlefield, Jr., Rose H. Staples,* for appellees.

GREGORY, Justice, dissenting.

I agree with the majority that a cause of action for wrongful birth or wrongful conception should be recognized in Georgia. However, I cannot agree with the proposition that the costs of rearing a child are not recoverable in such an action. I would not distinguish wrongful birth actions from other medical malpractice actions: that is, traditional principles of negligence law making physicians liable for the foreseeable consequences of negligently performed operations should apply to actions for wrongful birth. Bowman v. Davis, 48 Ohio St. 2d 41 (356 NE2d 496) (1976); "Judicial Limitations on Damages Recoverable for the Wrongful Birth of a Healthy Infant," 68 Va. L. Rev. 1311 (1982); Milsteen, Jeff L., "Recovery of Childrearing Expenses in Wrongful Birth Cases: A Motivational Analysis," 32 Emory L. J. 1167 (1983). Clearly the foreseeable consequences of a wrongful birth include the expenses of raising the child to the age of majority. See, Annotation, 83 ALR3d 15.

It cannot be said that these damages are too speculative to assess, as the costs of raising a child are routinely calculated by juries. See, e.g., Troppi v. Scarf, 31 Mich. App. 240 (187 NW2d 511) (1971). These damages are at least as concrete as the measure of damages for the wrongful death of a child who has no established earning capacity. In such a case "the value of the child's life must be established by the enlightened conscience of an impartial jury as applied to the evidence in the case . . . [T]he question of determining the amount to be awarded is almost entirely within the discretion of the jury." *Collins v. McPherson,* 91 Ga. App. 347, 349 (85 SE2d 552) (1954). Further, the duty to support does not extend beyond the child's eighteenth birthday, thus limiting the damages which may be recovered as the

costs of rearing the child. See OCGA § 39-1-1 (Code Ann. § 71-101); *Ritchea v. Ritchea,* 244 Ga. 476 (260 SE2d 871) (1979).

Because I cannot agree with the majority view that public policy dictates the exclusion of these damages, I respectfully dissent. I am authorized to state Justice Smith joins in this dissent.