**Patricia A. CAMPBELL, Individually and as mother and natural Guardian of Thomas Campbell, Individually and as father and natural Guardian of Jennifer L. Campbell, by her natural Guardians and next friends, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**Civ. A. No. 1:88–CV–2951–JOF.**

United States District Court, N.D. Georgia, Atlanta Division.

April 5, 1990.

---

Myles Eric Eastwood, Taylor Webb
Jones, Jones, Brown, Brennan & Eastwood,
Atlanta, Ga., Reid George Kennedy, Reid
W. Kennedy, Kennedy & Kennedy, Mariet-
ta, Ga., for plaintiffs.

Nina Loree Hunt, Office of U.S. Atty.,
N.D. Ga., Atlanta, Ga., for defendant.

## ORDER

FORRESTER, District Judge.

This matter is before the court on defendant's motion to dismiss or, in the alternative, to certify a question to the state court. Plaintiffs are Patricia and Thomas Campbell, individually and as natural guardians of plaintiff Jennifer Campbell. All three seek recovery under the Federal Tort Claims Act (FTCA) for the alleged negligence of a doctor employed at the Ft. McPherson Army Health Clinic in failing to diagnose Patricia Campbell's pregnancy. They allege that had the pregnancy been timely diagnosed, an amniocentesis test could have been performed and would have revealed that Jennifer Campbell suffers

from a serious genetic defect. Had they known of this defect, the parents would have aborted the child. The government raises two grounds in support of its motion to dismiss. The first is that only Patricia Campbell submitted a proper claim to the Army prior to filing suit as is required under the FTCA. The second is that Georgia law does not recognize the causes of action brought here, wrongful life and wrongful birth.

## I. ADMINISTRATIVE CLAIM.

The plaintiffs presented their claim to the Army on a Standard Form 95. Exhibit A to Complaint. In the section of the form marked for name and address of claimant, it was typed Patricia Campbell with her address and an asterisk after her name. At the bottom of the form on that same page was typed " *Sgt. Campbell—Baby girl Campbell." The form was signed by Patricia Campbell. An attachment was provided which explained her claim. The focus of the four page attachment was on the events that occurred to Mrs. Campbell in visiting the clinic and in the course of her pregnancy. It briefly described the genetic defect and consequent abnormalities suffered by Jennifer Campbell. The last paragraph stated,

> It is Mrs. Campbell's position that Dr. Desai was professionally negligent in failing to diagnose the pregnancy, and as a result, Mrs. Campbell was deprived of her right to choose to terminate her pregnancy. Having no right of choice proved most tragic in this case due to the detectable genetic disease of the child. Accordingly, Mrs. Campbell and Sergeant Campbell must raise this child and bear all the expenses and demands upon them that such an undertaking entails. Lastly, the child herself, must live with this genetic defect.

The claim was made for $5,000,000.

The Army proceeded to negotiate with the Campbells, and developed a settlement agreement. *See* Exhibit D to Complaint.

The first paragraph of the agreement states that it is between the United States and Thomas Campbell and Patricia Campbell, both individually and as parents and natural guardians of Jennifer Campbell. They are referred to as "claimants" in both paragraph I and paragraph V. The settlement agreement provided a trust for Jennifer Campbell, that an annuity would be purchased for Jennifer Campbell, and that money would be paid to Thomas Campbell and Patricia Campbell both individually and as guardians of Jennifer Campbell. The parents signed an acknowledgement that they both accepted the terms of the settlement agreement. Exhibit E to Complaint.

The claim and proposed settlement were rejected by the Attorney General. Exhibit G to Complaint.[1] In a subsequent communication, the Army clarified that Thomas Campbell and Jennifer Campbell were included in the denial. Exhibit H to Complaint.

## II. FAILURE TO PRESENT ADMINISTRATIVE CLAIM.

The government argues that Thomas Campbell and Jennifer Campbell are not proper claimants because they did not file a separate administrative claim, and that the claim presented did not include a sum certain.

The Federal Tort Claims Act provides that an action cannot be instituted in court under the Act "unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency...." 28 U.S.C. § 2675. This requirement is jurisdictional and cannot be waived. *Employees Welfare Committee v. Daws,* 599 F.2d 1375 (5th Cir.1979). This requisite minimal notice informs the agency of the circumstances of the accident so it can investigate and respond either by settlement or defense. *Adams v. United States,* 615 F.2d 284 (5th Cir.1980). The purpose of the notice is to ease court congestion and to avoid unnecessary litigation, while making

---

**1.** Though no reason is stated in the denial letter, the complaint alleges they were told the rejection was due to the "primary policy position that the Government does not wish to be viewed as funding abortions." Complaint, ¶ 13.

it possible for the government to expedite a fair settlement. *Brown v. United States*, 838 F.2d 1157, 1160 (11th Cir.1988). The notice requirement is met if the claimant (1) gives the agency written notice sufficient to enable the agency to investigate the claim, and (2) places a value on the claim. *Id.; Adams*, 615 F.2d at 289.

These requirements have been met in this case. All three plaintiffs were listed as claimants on the Standard Form 95. Moreover, all the information necessary to investigating the claim was provided in the claim form. Even more importantly, the government throughout the settlement process treated all three as claimants. The government denied their claim on the merits, and for reasons other than any technical non-compliance with the notice requirements. It does not appear that the government raised the question of the inadequacy of their claim at any time during the settlement process. This case is especially like *Reilly v. United States*, 665 F.Supp. 976 (D.R.I.1987), *rev'd in part on other grounds*, 863 F.2d 149 (1st Cir.1988). In that case, parents and their child were seeking damages for negligent delivery of the child. The court found that the three were joint claimants and were not required to submit separate forms. Though the parents and child did not separately identify their injuries, it was clear that all three were joint claimants.

The situation is also similar to *Del Valle Rivera v. United States*, 626 F.Supp. 347 (D.P.R.1986), and *Champagne v. United States*, 573 F.Supp. 488 (E.D.La.1983). In *Del Valle Rivera*, the government requested the names of all survivors of the decedent, and was fully informed of the number and identities of persons who were making claims against the government. The court held that the government could not argue that the claim was inadequate, and could not stand on technicalities to attack a claim in the judicial action once it has been fully investigated. In *Champagne*, the minors were listed on the claim, but not their mother's authority to act for them. The court found that the government was aware of all the claims. The agency processed and denied the claim without mentioning the defect in the claim or any problems that would arise from it. That court also held that there was no requirement that a separate form be filed for each claimant, and that the key factor in whether a claim filed was sufficient notice under the act is whether the agency was given adequate notice of the claim so that it can settle and investigate the claim. Similarly, in this case, the government was aware of all information necessary to investigate and settle the claim, it treated all three parties as claimants, and denied the claims on the merits. The purposes behind the statute were met in this case, as the agency was able to investigate the incident and attempt to settle it.

The case relied on by the government, *Walker v. United States*, 471 F.Supp. 38 (M.D.Fla.1978), *aff'd*, 597 F.2d 770 (5th Cir. 1979), is inapposite. In that case, the wife was not named on her husband's claim, and she did not sign the claim form. There was no mention of her injuries on the form. The court held that a person cannot presume that their claim is raised in the administrative claim of his or her spouse. However, in the present situation, Thomas Campbell was named as a claimant on the face of the claim form, and the attachment described his claim, the costs of raising the child. Further, the government treated him as a claimant throughout the settlement process, and cannot now urge that the claim was defective merely because he failed to sign the form.

The claim form had a single figure of $5,000,000 in the space provided for value of the claim. The requirement that a claim be presented to the agency has been construed to mean that a claim for a "sum certain" must be presented. *Molinar v. United States*, 515 F.2d 246 (5th Cir.1975). However, this circuit has taken a somewhat lenient approach to the sum certain requirement. *Tidd v. United States*, 786 F.2d 1565, 1567 n. 6 (11th Cir.1986). For example, in *Molinar*, repair bills included with the claim form were found to be sufficient to satisfy the sum certain requirement. 515 F.2d at 246. The government urges that the single dollar amount is inad-

equate in the present case as there are multiple claimants, and it would not have been able to divide up the amounts properly during settlement. However, as the course of settlement clearly shows, the government had sufficient information to be able to structure a complex settlement and trust agreement. This case involves complex damages issues, and one cannot expect the claimants to itemize their damages totally. Therefore, the sum certain requirement was met.

The Campbells met the jurisdictional notice requirement of the Federal Tort Claims Act under 28 U.S.C. § 2675. Therefore, their claims have been properly presented to this court, and the defendant's motion to dismiss on this ground must be DENIED.

### III. FACTS UNDERLYING COMPLAINT.

■ For purposes of a motion to dismiss under Rule 12(b)(6), the court must assume that the plaintiffs can prove the facts as alleged in the complaint. *Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1964); *Burch v. Apalachee Community Mental Health Services*, 840 F.2d 797, 798 (11th Cir.1988).

The complaint reveals the following facts. Patricia Campbell went three times to the OB–GYN section of the clinic, experiencing certain symptoms and expressing concerns that she was pregnant. The doctor knew that Mrs. Campbell was forty years old and at risk for a genetically defective child. The doctor repeatedly stated that Mrs. Campbell was not pregnant and did not conduct a pregnancy test until the third time Mrs. Campbell came to the clinic, four months after her first appointment. She was pregnant. Failure to conduct a pregnancy test in this situation was negligent.

Once the pregnancy was confirmed, Mrs. Campbell wished to have an amniocentesis test and sought information on amniocentesis and on terminating the pregnancy. Because of budget cuts, the government clinics would not do either the amniocentesis procedure or an abortion. She then sought out a private physician, who advised her it was too late in the pregnancy to do safely either an amniocentesis or an abortion. If her pregnancy had been diagnosed at either of the first two visits, an amniocentesis could have been performed. A few months later Jennifer was born with a chromosomal defect which would have been revealed in an amniocentesis. The plaintiffs allege they would have chosen to abort the child if this information had been available.

Jennifer's genetic defect is permanent and incurable and results in numerous physical and mental abnormalities. Jennifer's I.Q. will never be more than that of an eight-year-old child. She has had corrective surgery for a clubbed foot, crossed eyes and other eye conditions, esophageal sphincter, and insertion of a stoma (an opening or hole) for a feeding tube. She has one leg shorter than the other, but this cannot be corrected with surgery. Because of Jennifer's esophagus, she cannot swallow safely and must be fed through a tube through the stoma in her abdomen. This procedure can be very painful to the child because air becomes trapped in her stomach. A tube is used at night for slow feeding, and must be checked continually to make sure it does not come out or get wrapped around the child's neck. Patricia Campbell has not returned to work after the baby's birth because of the extraordinary amount of care Jennifer requires.

The complaint is not broken down into separate counts according to each plaintiff's claims. However, the complaint does describe the injuries and costs incurred by the plaintiffs. It is alleged that Patricia has incurred pain and suffering and loss of income. The parents have incurred the costs of delivery, and they have incurred and will incur expenses for the special care of Jennifer including special education and special equipment. Less funds are available for other family members, and the parents require and will incur the costs of mental health care. Jennifer will require institutionalization in the future. Jennifer's life expectancy is alleged to be seventy years. Plaintiffs seek five million dollars in damages.

The negligence alleged in this action is not that the doctor caused the defects in the child, but rather that the negligence deprived the parents of information necessary to make a decision whether or not to continue the pregnancy. The government argues that Georgia law does not recognize a cause of action on behalf of either the parents or the child for this type of negligence.

## IV. MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM.

■ The FTCA provides that the law of the place of the act or omission controls in an FTCA action. 28 U.S.C. § 1346(b). In the absence of direct precedent of the state involved, the court can look to the law of its sister states. *Robak v. United States*, 658 F.2d 471 (7th Cir.1981).

At the time this motion was filed, the Georgia courts had not directly addressed the issues of wrongful birth and wrongful life. "Wrongful birth" claims are typically brought by parents claiming that the doctor's negligence in failing to diagnose a defect in the fetus prevented the parents from terminating the pregnancy as they would have done had they been given the information. In *Fulton–DeKalb Hospital Authority v. Graves*, 252 Ga. 441, 314 S.E.2d 653 (1984), the Georgia Supreme Court recognized a cause of action for wrongful pregnancy or wrongful conception. In that case, the plaintiff became pregnant after a negligently performed sterilization procedure. The cause of action presented in the instant case is different than in *Graves*, because here the negligent physician did not bring about the child's existence through her negligence.

Rather, her negligence prevented the child's non-existence.

Since this motion was submitted to the court, the Georgia Court of Appeals has decided *Atlanta Obstetrics & Gynecology Group, P.A. v. Abelson*, 195 Ga.App. 274, 392 S.E.2d 916 (Ga.Ct.App.1990). In that case, the court recognized one of the causes of action at issue here, "wrongful birth."[2] In *Abelson*, the parents contended the physicians were negligent in not advising them of the increased risk of genetic abnormalities and in failing to have an amniocentesis performed. If the amniocentesis had been performed, it would have revealed that the child suffered from Down's Syndrome, and the parents would have opted to have an abortion. The court rejected the defendants' arguments that the cause of action falls outside of traditional tort principles or that the element of damages should prevent the recognition of the cause of action. The court concluded,

> Accordingly, we hold that, like a "wrongful pregnancy" claim, a "wrongful birth" claim is within the parameters of traditional Georgia tort principles. "Such action is no more than a species of malpractice which allows recovery from a tortfeasor in the presence of an injury caused by intentional or negligent conduct." *Fulton–DeKalb Hosp. Auth. v. Graves*, [252 Ga.] at 443(1) [314 S.E.2d 653].

*Abelson*, 195 Ga.App. at 277, 392 S.E.2d at 920. *Abelson* recognizes the cause of action involved in this case, and therefore controls the outcome of this case. The parameters of the recovery sought are discussed below.

**2.** Most courts that have addressed the issue of a wrongful birth claim have found that it is available. *See Lininger v. Eisenbaum*, 764 P.2d 1202 (Colo.1988) (en banc); *Haymon v. Wilkerson*, 535 A.2d 880 (D.C.1987); *DiNatale v. Lieberman*, 409 So.2d 512 (Fla.Dist.Ct.App.1982); *Blake v. Cruz*, 108 Idaho 253, 698 P.2d 315 (1984); *Cockrum v. Baumgartner*, 95 Ill.2d 193, 69 Ill.Dec. 168, 447 N.E.2d 385, *cert. denied*, 464 U.S. 846, 104 S.Ct. 149, 78 L.Ed.2d 139 (1983); *Proffitt v. Bartolo*, 162 Mich.App. 35, 412 N.W.2d 232 (Mich.Ct.App.1987); *Smith v. Cote*, 128 N.H. 231, 513 A.2d 341 (1986); *Berman v. Allan*, 80 N.J. 421, 404 A.2d 8 (1979); *Alquijay v. St. Luke's–Roosevelt Hospital Center*, 63 N.Y.2d 978, 483 N.Y.S.2d 994, 473 N.E.2d 244 (N.Y.1984); *Ziemba v. Sternberg*, 45 A.D.2d 230, 357 N.Y.S.2d 265 (N.Y.App.Div.1974); *Jacobs v. Theimer*, 519 S.W.2d 846 (Tex.1975); *James G. v. Caserta*, 175 W.Va. 406, 332 S.E.2d 872 (W.Va. 1985); *Dumer v. St. Michael's Hosp.*, 69 Wis.2d 766, 233 N.W.2d 372 (1975). *But see Wilson v. Kuenzi*, 751 S.W.2d 741 (Mo.), *cert. denied*, 488 U.S. 893, 109 S.Ct. 229, 102 L.Ed.2d 219 (1988); *Azzolino v. Dingfelder*, 315 N.C. 103, 337 S.E.2d 528 (1985), *cert. denied*, 479 U.S. 835, 107 S.Ct. 131, 93 L.Ed.2d 75 (1986).

### A. *Parents' Claims.*

As in *Abelson*, most of the courts recognizing a wrongful birth cause of action do so on the grounds that it is a type of negligence or medical malpractice action and can be addressed through traditional tort law principles.[3] *Abelson* found that the notions of duty and breach present no difficulties to recognizing the cause of action, as it is a form of malpractice that is shown by traditional forms of proof. 195 Ga.App. at 275, 392 S.E.2d at 918. This complaint alleges that this duty between doctor and patient was breached. Causation can be shown if the plaintiff can prove that she would have obtained an abortion if the doctor had not been negligent. See *Abelson*, 195 Ga.App. at 277, 392 S.E.2d at 920.

Like the defendants in *Abelson*, the defendant here argues that the injury alleged to have been caused here is the child's life, and that life, even with severe defects, cannot be an injury cognizable at law. However, like many other courts before, one can take the view that the injury alleged is not the life of the child, but rather a simple failure to diagnose a condition at a time when this state presently would allow the mother to make a choice whether to allow her child to come to term. *Proffitt v. Bartolo*, 162 Mich.App. 35, 412 N.W.2d 232 (Mich.Ct.App.1987); *Azzolino v. Dingfelder*, 315 N.C. 103, 118–119, 337 S.E.2d 528, 538 (1985) (Exum, J., dissenting), *cert. denied*, 479 U.S. 835, 107 S.Ct. 131, 93 L.Ed.2d 75 (1986). The *Abelson* court held that the birth of the child was "clearly not, in and of itself, an injury" to the parents. *Abelson*, 195 Ga.App. at 276, 392 S.E.2d at 919. The *Abelson* parents, similarly to the Campbells, alleged an injury not from the ordinary expenses of raising their child, but rather to the "extent of incurring the extraordinary child-rearing expenses resulting from her foreseeable birth defect." *Id.* A point of difference between this case and *Abelson* is that the Abelsons apparently planned to have a child, and the court reasoned that the child's birth alone could not

be an injury. Moreover, though somewhat blurred in the Georgia opinion, injury as a matter of law is distinct from the concept of damages, the monetary relief awarded to one who has suffered an injury. *Smith*, 513 A.2d at 347.

Because the Georgia courts have recognized a cause of action for wrongful birth on behalf of the parents, defendant's motion to dismiss must be DENIED in part on this ground.

### B. *Child's Claim.*

Jennifer's claim falls under the general category of "wrongful life" claims. In this situation, the child as a plaintiff brings an action alleging that the doctors should pay for the expenses of raising it because of the defendant's negligence in diagnosing pregnancy or an abnormality with the child prior to birth. *Abelson* did not address a claim brought by the child herself against the doctors. As noted by the court in *Graves*, "[a]n action brought by a child against the parents or physician on the theory that because of his illegitimacy or birth defects he would have been better not born has found almost no support in the law." 252 Ga. at 442, 314 S.E.2d 653. Most courts to address the issue have rejected this cause of action. *See Gildiner v. Thomas Jefferson Univ. Hosp.*, 451 F.Supp. 692 (E.D.Penn.1978); *Smith v. United States*, 392 F.Supp. 654 (E.D.Ohio 1975) (Texas law); *Lininger v. Eisenbaum*, 764 P.2d 1202 (Colo.1988) (en banc); *DiNatale v. Lieberman*, 409 So.2d 512 (Fla.Dist. Ct.App.1982); *Blake v. Cruz*, 108 Idaho 253, 698 P.2d 315 (1984); *Eisbrenner v. Stanley*, 106 Mich.App. 357, 308 N.W.2d 209 (1981); *Wilson v. Kuenzi*, 751 S.W.2d 741 (Mo.), *cert. denied*, 488 U.S. 893, 109 S.Ct. 229, 102 L.Ed.2d 219 (1988); *Smith v. Cote*, 128 N.H. 231, 513 A.2d 341 (1986); *Becker v. Schwartz*, 46 N.Y.2d 401, 413 N.Y.S.2d 895, 386 N.E.2d 807 (1978); *Azzolino*, 315 N.C. at 103, 337 S.E.2d at 532; *James G. v. Caserta*, 175 W.Va. 406, 332 S.E.2d 872 (W.Va.1985); *But see Turpin v. Sortini*, 31 Cal.3d 220, 182 Cal.Rptr. 337,

---

**3.** See, for example, *Smith v. Cote*, 128 N.H. at 231, 513 A.2d 341, where the court discussed a

wrongful birth cause of action in terms of the breach of a duty causing harm to the plaintiff.

643 P.2d 954 (Cal.1982); *Procanik v. Cillo,* 97 N.J. 339, 478 A.2d 755 (1984).

The concept of a wrongful life cause of action has two fundamental flaws. It is based on the premise that the doctor owes a duty to the child, and absent negligence, would prevent the child from being born. Recognition of a wrongful life claim would necessarily be based on a much broader scope of duty between the doctor and the fetus than courts are willing to find. Clearly, the doctor has no duty to provide information to the fetus prior to its birth as he has to the parents to enable them to make a decision on procreation. *James G.,* 332 S.E.2d at 872.

The cause of action is also premised on the notion that the child's life is a legally cognizable injury to the child. *See Becker,* 413 N.Y.S.2d at 900, 386 N.E.2d at 812; *Smith,* 513 A.2d at 352. In the present situation, it is impossible to say that the defendant's conduct in any way caused the plaintiff's birth or caused the plaintiff's physical abnormalities. The child's life and her consequent abnormalities were already in existence before the doctor entered the scene. This court agrees with the New Hampshire Supreme Court's decision in *Smith* that a wrongful life action has a "primary deficiency ... [in] that it imposes liability even if the defendant has caused no harm. If the child cannot prove injury, 'it is unfair and unjust to charge the doctors with the infant's medical expenses.' " 513 A.2d at 354. The remedy in a negligence action is designed to place the injured party in a position he would have occupied but for the negligence. Because the child argues that without the negligence it never would have been born, a wrongful life claim "demands a calculation of damages dependent upon a comparison between the Hobson's choice of life in an impaired state and non-existence. This comparison the law is not equipped to make." *Becker,* 413 N.Y.S.2d at 900, 386 N.E.2d at 812. Moreover, "whether it is better never to have been born at all than to have been born with even gross deficiencies is a mystery more properly to be left to the philosophers and the theologians." *Id.* The plaintiff in a wrongful life action is in essence asking the court to recognize "a right not to be born," *Smith,* 513 A.2d at 355, and this most courts, and, it is believed, the Georgia courts would refuse to do. A wrongful life action by Jennifer is not available, and defendant's motion to dismiss must be GRANTED on this ground.

### C. *Damages under Wrongful Birth Claim.*

In *Abelson,* the Georgia Court of Appeals allowed the plaintiffs to recover the extraordinary expenses of raising their child, but not the ordinary expenses that accompany raising the child. *Abelson,* 195 Ga.App. at 278–279, 392 S.E.2d at 921. This is "the cost of supporting a child with such a defect reduced by the cost of rearing a child without such a defect." *Id.*[4] Allowing recovery for the extraordinary expenses of the child's care is consistent with the general tort principle that a tortfeasor should be liable for the consequences of his wrong.[5] It also avoids the

---

4. The *Abelson* court joined the apparent consensus of courts in other states that have addressed the problem of a wrongful birth case with a deformed child. *Turpin,* 182 Cal.Rptr. at 337, 643 P.2d at 954; *DiNatale,* 409 So.2d at 512; *Proffitt,* 412 N.W.2d at 232; *Smith,* 07 513 A.2d at 341; *Schroeder v. Perkel,* 87 N.J. 53, 432 A.2d 834 (1981); *Karlsons v. Guerinot,* 57 A.D.2d 73, 394 N.Y.S.2d 933 (N.Y.App.Div.1977); *Harbeson v. Parke–Davis, Inc.,* 98 Wash.2d 460, 656 P.2d 483 (1983); *James G.,* 332 S.E.2d at 872; *Dumer,* 69 Wis.2d at 766, 233 N.W.2d at 372. At least one court has allowed all expenses related to the raising of the child, *Robak,* 658 F.2d at 471 (construing Alabama law).

5. The wrong, if any, here was a missed diagnosis. The physician did nothing which lead to the pregnancy or caused the abnormalities. The reason that the law would put her assets to work to help raise the child is much more remote. For the want of the diagnosis the test was not ordered and for want of the test the defects were unknown and for want of knowledge a child was born, all for the want of her care. So does the law reason, but of course the plaintiffs must convince the finder of fact that the birth inevitably followed from the physician's want of care, if any, to show that the damages they seek proximately flowed from any malpractice.

problems of speculation in assessing general damages for the child's life and estimating in some abstract way the value of a human life. Such an award also does not create a windfall for the parents, for in this situation they were not planning on a child, and only extraordinary expenses will be allowed.

These costs are recoverable to the extent the plaintiffs prove that the child's life span and their own life spans coincide, as that is the only time a parental obligation to support exists. *Abelson* at 279, 392 S.E.2d at 921. They are recoverable beyond the child's eighteenth birthday if the child will be completely destitute, as Georgia law imposes the duty to support on parents of a destitute adult. *Id.;* O.C.G.A. § 36–12–3.

However, the *Abelson* court, following *Graves*, specifically rejected the benefit rule. Under the benefit rule, damages would be reduced by the benefit, including joy and happiness, a parent receives from the child. The basic premise of this decision was that the "economic consequences attendant to the birth and rearing of a child are burdens which differ in species from the benefits which flow from joys a child brings to a family." *Abelson* at 280, 392 S.E.2d at 921 (quoting *Graves*, 252 Ga. at 444, 314 S.E.2d 653).

The Georgia Supreme Court in *Graves* in the wrongful pregnancy situation allowed the plaintiffs to recover damages for pain and suffering, medical costs, the costs of delivery, lost wages, and loss of consortium, as these damages are consistent with damages in an ordinary malpractice case. 252 Ga. at 443, 314 S.E.2d 653. *Abelson* did not address these damage questions. Because *Graves* approved of expenses related to pregnancy as flowing directly from the negligence, those expenses also should be allowed in the present situation. Therefore, the parents may seek to recover pain and suffering for the pregnancy and childbirth, medical expenses, the costs of deliv-

ery, lost wages, and loss of consortium during the pregnancy and childbirth.

The court in *Abelson* also held that damages for mental and emotional distress were unavailable for the wrongful birth claim.[6] The court held that these damages also were unavailable for the pregnancy and delivery, because the plaintiffs "wanted to become parents 'and the pregnancy and delivery in connection with [their daughter] were no more difficult than if [she] had been normal.'" *Abelson*, 195 Ga.App. at 281, 392 S.E.2d at 922 (quoting *Moores v. Lucas*, 405 So.2d 1022, 1026 (Fla. App.1981)). Therefore, mental and emotional distress claims are not available in this case. Even though this pregnancy was not planned, the Georgia courts would be likely to extend the reasoning in *Abelson* to prohibit emotional and mental distress damages for the pregnancy and delivery.

## V. CHAMPUS BENEFITS.

The government argues that it is at least entitled to an offset of CHAMPUS benefits from any damages awarded. There has been no evidentiary showing that the plaintiffs received CHAMPUS benefits, and therefore this issue would be better addressed at the summary judgment stage of the proceedings.

## VI. CONCLUSION.

The plaintiffs met the notice requirements under the Federal Tort Claims Act and have therefore met the jurisdictional requirements prior to institution of this judicial action. A cause of action on behalf of the parents for the pregnancy and the birth of this child is available under Georgia law. However, any claim for relief by the child herself is not available. The damages which can be recovered by the parents include the costs associated with the pregnancy and birth, as well as the extraordinary expenses of raising the child.

The wrongful birth and wrongful life issues have not been addressed by the

---

6. Other courts have divided on whether emotional distress is recoverable. *Compare Smith,* 513 A.2d at 341 *with Berman,* 404 A.2d at 8.

Georgia Supreme Court and involve a multiplicity of issues grounded in the public policy of the State of Georgia. This opinion involves a controlling question of law as to which there is a substantial ground for difference of opinion, and an immediate appeal from this order may materially advance the ultimate termination of this litigation. An interlocutory appeal of this order would be beneficial to the ultimate termination of this litigation, as the Eleventh Circuit Court of Appeals would be able to certify this question to the Georgia courts.

Defendant's motion to dismiss is GRANTED IN PART and DENIED IN PART.

SO ORDERED.