**SECOND DIVISION**
**MILLER, P. J.,**
**RICKMAN and REESE, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**June 21, 2019**

# In the Court of Appeals of Georgia

A19A0445. NORMAN et al. v. XYTEX CORPORATION et al.

REESE, Judge.

Wendy and Janet Norman (collectively, "the Appellants") appeal from the trial court's order granting in part and denying in part the motion to dismiss filed by Xytex Corporation, J. Todd Spradlin, M. D., and Mary Hartley ("the Appellees") for damages premised on a transaction with a sperm bank, which resulted in the birth of the Appellants' child. For the reasons set forth infra, we affirm.

Viewed in favor of the Appellants,[1] the complaint alleged that the Appellants purchased from Xytex Corporation ("Xytex") sperm that Xytex had procured from

---

[1] See *Northway v. Allen*, 291 Ga. 227, 229 (728 SE2d 624) (2012) ("On appeal, a trial court's ruling on a motion to dismiss for failure to state a claim for which relief may be granted is reviewed de novo and the pleading being challenged, i.e., the [complaint], is construed in favor of the party who filed it.").

a man identified as "Donor #9623." According to the complaint, Donor #9623 applied to become a sperm donor with Xytex and began regularly selling his sperm to Xytex in October 2000. The Appellants purchased, through the Appellees, sperm from Donor #9623, and Wendy Norman gave birth to a son, A. A., in June 2002. The complaint alleged that A. A. was diagnosed with Attention Deficit Hyperactivity Disorder at age nine, and with Thalassemia Minor, "an inherited blood disorder[.]" Further, A. A. had "suicidal and homicidal ideations[,]" and had been prescribed various medications including anti-depressants and an anti-psychotic.

The Appellants alleged that Donor #9623 had "completely fabricated" his Xytex sperm donor application. They alleged, for example, that "the profile for [Donor #9623] represented as fact that [he] had an IQ of 160, multiple college degrees, a clean mental health history, and no criminal background." According to the Appellants, however, Donor #9623 did not obtain a college degree until 2015; had been diagnosed with "Schizophrenia, Narcissistic Personality Disorder, a drug induced psychotic disorder, and significant grandiose delusions"; had been repeatedly hospitalized for mental health reasons, and had "committed a residential burglary in 2005[,]"a crime for which he spent eight months in custody; and had been arrested for other crimes.

The Appellants brought suit against the Appellees for fraud, negligent misrepresentation, products liability and/or strict liability, products liability and/or negligence, breach of express warranty, breach of implied warranty, battery, negligence, , unfair business practices, specific performance,[2] false advertising, promissory estoppel, and unjust enrichment, seeking various damages, including punitive damages, and attorney fees. The Appellees filed a motion to dismiss arguing, inter alia, that the complaint alleged claims for "wrongful birth," which is not a legally recognized claim in Georgia.

The trial court granted in part and denied in part the Appellees' motion, dismissing all the claims with the exception of the claim for specific performance. The trial court certified its order for immediate review, and this Court granted the Appellants' application for interlocutory review. This appeal followed.

> We review the grant of any motion to dismiss de novo, and a motion to dismiss should not be granted unless the allegations of the complaint disclose with certainty that the claimant[s] would not be entitled to relief under any state of provable facts asserted in support

---

[2] In their claim for specific performance, the Appellants alleged that the Appellees had withheld "significant information" about the Appellees' sperm donors, and sought to have that information released to "sperm purchasers[.]"

3

thereof. We construe the pleadings in the light most favorable to the plaintiff[s] with any doubts resolved in the plaintiff[s'] favor.[3]

With these guiding principles in mind, we turn now to the Appellants' specific claims of error.

The Appellants argue that the trial court erred in construing their claims, other than that for specific performance, as claims for wrongful birth.

"An action for 'wrongful birth' is brought by the parents of an impaired child and alleges basically that, but for the treatment or advice provided by the defendant[s], the parents would have aborted the fetus, thereby preventing the birth of the child."[4] The Supreme Court of Georgia has held that "'wrongful birth' actions shall not be recognized in Georgia absent a clear mandate for such recognition by the

---

[3] *Harrell v. City of Griffin*, 346 Ga. App. 635, 636 (816 SE2d 738) (2018) (citations and punctuation omitted).

[4] *Atlanta Obstetrics & Gynecology Group v. Abelson*, 260 Ga. 711, 713 (398 SE2d 557) (1990) (punctuation omitted). In contrast, "an action for 'wrongful life' is brought on behalf of an impaired child and alleges basically that, but for the treatment or advice provided by the defendant[s] to [the child's] parents, the child would never have been born."). Id.

legislature."[5] This principle applies even when plaintiffs attempt to characterize what is, fundamentally, a wrongful birth claim as some other cause of action.[6]

The trial court, in its order dismissing the complaint in part, found that the Appellants "sought and desired the conception that brought them A. A."; therefore, the complaint did not allege a wrongful pregnancy, but rather a wrongful birth. In a footnote, the trial court noted that "Georgia law recognizes only those claims in which the alleged negligence resulted in *un*desired conception."[7] The Supreme Court of Georgia has defined "wrongful pregnancy" or "wrongful conception" actions "as those brought by the parents of a child whose conception or birth was due to the negligence of a physician in performing a sterilization or abortion."[8] The Court held

---

[5] *Abelson*, 260 Ga. at 714.

[6] See *Gale v. Obstetrics & Gynecology*, 213 Ga. App. 614, 615 (445 SE2d 366) (1994) ("Though couched in terms of breach of contract, breach of confidential relationship, and negligence, the cause of action set forth in [the plaintiffs'] complaint is, in reality, one for wrongful birth.").

[7] (Emphasis in original.)

[8] *Fulton-DeKalb Hosp. Auth. v. Graves*, 252 Ga. 441, 442 (1) (314 SE2d 653) (1984) (recognizing a wrongful pregnancy or wrongful conception claim against a hospital whose staff physician had negligently performed a sterilization procedure).

that both wrongful pregnancy and wrongful conception actions are recognized in Georgia.[9]

Damages for wrongful conception "include expenses for the unsuccessful medical procedure which led to the pregnancy, pain and suffering, medical complications, costs of delivery, lost wages, and loss of consortium," but do not include the costs of raising the child, because "a parent cannot be said to have suffered an injury in the birth of a child."[10]

In their complaint, the Appellants specifically contended that "[h]ad Plaintiffs known the true facts, Plaintiffs would not have purchased the sperm of Donor #9623 from Defendants[.]" Citing to various cases, including those asserting public policy claims, the Appellants alleged that Xytex had a "preconception duty of care" to prospective parents and their unborn progeny. None of those cases are applicable here. In those cases, the Georgia courts permitted recovery from negligent sterilization procedures or for damages resulting from exposure to chemicals or

---

[9] Id. at 443 (1) (such claims are "no more than a species of malpractice" that allow a plaintiff to recover damages for intentional or negligent conduct).

[10] *Wasdin v. Mager*, 274 Ga. App. 885, 887-888 (1) (619 SE2d 384) (2005) (rejecting a claim for the mental distress of raising a child conceived after a negligent sterilization).

infectious diseases.[11] All of the Appellants claims directly relate to the fact that, had

they known the health, educational and criminal history of Donor #9623, they would

not have purchased his sperm from the Appellees. As the Supreme Court of Georgia

stated "we are unwilling to say that life, even life with severe impairments, may ever

amount to a legal injury."[12] This is a task best addressed by the Georgia General

Assembly.[13]

---

[11] See *Beller v. Tilbrook*, 275 Ga. 762 (571 SE2d 735) (2002) (noting that a husband "recognize[d] that he could be held liable in tort for negligently or deliberately infecting [his wife] with herpes, a sexually transmitted disease[ ]"); *Graves*, 252 Ga. at 442 (1); *Hitachi Chem. Electro-Products v. Gurley*, 219 Ga. App. 675, 676-677 (1) (466 SE2d 867) (1995) (physical precedent only) (Affirmed the trial court's denial of defendant chemical company's motion to dismiss where plaintiffs alleged that their children's prenatal and/or postnatal injuries were caused by exposure to defendant's dangerous chemicals prior to the births of the children.); cf *Abelson*, 260 Ga. at 715 (The Court held that there was no wrongful birth cause of action in a suit brought by the parents of a girl born with Down syndrome against the obstetrician who allegedly failed to advise the mother of a preconception diagnostic test. The Court was unwilling to recognize that a child could be considered an "injury.").

[12] *Abelson*, 260 Ga. at 715 (citing *Azzolino v. Dingfelder*, 315 N.C. 103 (337 SE2d 528) (1985)) (additional citation and punctuation omitted).

[13] Id. at 714, n. 5 ("[T]here needs to be a thorough assessment of all of the public policy considerations involved in recognition of 'wrongful birth' actions as well as a prospective establishment of the contours of the action, if it is to be recognized in this state. Such a task is best suited to the legislature.").

Based on the foregoing, the trial court did not err in granting in part and denying in part the Appellees' motion to dismiss.

*Judgment affirmed. Miller, P. J., and Rickman, J., concur*.