ON APPELLANT’S PETITION FOR SU-PERSEDEAS PENDING REVIEW
NIMMONS, Judge.
The appellant seeks a stay, pending his appeal, of the enforcement of a final order of the State Board of Medicine (Board) revoking the appellant’s license to practice medicine.
He relies upon Section 120.68(3), Florida Statutes, which provides in pertinent part:
(3) The filing of the petition does not itself stay enforcement of the agency decision, but if the agency decision has the effect of suspending or revoking a license, supersedeas shall be granted as a matter of right upon such conditions as are reasonable, unless the court, upon *48 petition of the agency, determines that a supersedeas would constitute a probable danger to the health, safety, or welfare of the state.
We are of the view that appellee, Department of Professional Regulation (Department), which opposes supersedeas in this case, has carried its burden of showing that permitting this doctor to continue to practice medicine during the pendency of this appeal would constitute “a probable danger to the health, safety, or welfare of the state” as such requirement has been interpreted by this court in Iturralade v. Department of Professional Regulation, 482 So.2d 375 (Fla. 1st DCA 1985) and Old Timers Restaurant and Lounge, Inc. v. State of Florida, Department of Business Regulation, 483 So.2d 463 (Fla. 1st DCA 1986).
We have before us the findings of fact of the hearing officer which were adopted by the Board in its final order. Such findings come to us with the presumption of correctness. From such findings, it appears that for the past eight years appellant has worked full time for an abortion clinic in Tampa known as “All Women’s Health Clinic.” His practice consists solely of performing abortions for that clinic and he has performed in excess of 15,000 of them during that time. He has no private practice, does not have admitting privileges at any of the hospitals in the area, and does not carry malpractice insurance.
In August 1986, A.L., a pregnant 16-year-old, entered All Women’s to have an abortion.[1] Appellant performed only a perfunctory examination on A.L. and estimated the gestational age of the fetus to be 12 weeks, an underestimation of 4 months, the actual age being 28 weeks. According to the hearing officer, if the appellant had conducted a proper examination, “it is inconceivable that he, an experienced' gynecologist, could underestimate the gestational age of the fetus by some four months.” The magnitude of appellant’s error was illustrated by his own testimony that a 12 week fetus is approximately 3 inches long and weighs 30 grams, while a 28 week fetus is approximately 14 inches long and weighs 1100 grams.
The hearing officer further found from the evidence:
Respondent started the procedure thinking he was aborting a 12 week fetus with the patient on the table and feet in the stirrups. After the instruments were inserted and the procedure started, Respondent concluded the fetus was 16 weeks, obtained a larger curette, then determined the fetus was more likely 20 weeks, again changed curette, and after removing fluid and part of an arm Respondent concluded that the gestational age of the fetus was some 28 weeks and required hospitalization to complete the procedure.
While the hearing officer recognized that mistakes can be made by prudent physicians in estimating gestational age, he found from the evidence that there clearly were no conditions present that would justify an error of the magnitude here involved. Stated the hearing officer:
Mistakes in determining gestational age can be made by a prudent physician if: (1) the patient is obese; (2) the uterus is very soft and the extremities difficult to locate; (3) the baby has a low fluid volume; (4) the patient is very tense; or, (5) the head of the fetus is felt and not the uterus. Here A.L. was more thin than obese which should have greatly facilitated palpation of the abdomen to determine the size of the uterus. Accepting the testimony that she was tense during the examination, and the earlier pregnancy would cause the uterus to be soft, no experienced gynecologist should conduct an examination of a patient such as A.L. and err on the magnitude here involved. Further, if the examination was difficult, the procedure should not have commenced until Respondent was reasonably positive of the gestational age of the fetus. One indication Respondent received that the fetus was older than 12 weeks wa,s the quantity of fluid drawn. Further, no experienced gynecologist should mistake the head of the *49 fetus as the extremity of the uterus on a patient such as A.L.
The hearing officer concluded that the appellant was guilty of gross malpractice under Section 458.331(t), Florida Statutes, by underestimating A.L.’s stage of pregnancy by 4 months thereby resulting in his performance of the abortion in the last trimester when such procedure was not necessary to save the life or preserve the health of the patient, thus violating Section 390.001(2), Florida Statutes.[2]
Although the penalty recommended by the hearing officer was suspension of appellant’s license to practice medicine for a period of six months followed by a two-year probationary term, the Board, upon reviewing the record, determined that the recommended penalty was too lenient under the circumstances and revoked appellant’s license.
As previously noted, at issue is whether a probable danger to the health, safety, or welfare of the state would be presented if appellant were allowed to continue practicing under his license during the pendency of his appeal.
We are not impressed by the fact that no evidence was presented that appellant had engaged in other third trimester abortions at the Tampa abortion clinic. Given the remarkably gross nature of the appellant’s violation occurring as it did in a practice requiring the utmost care and sensitivity in the making of extremely grave decisions, we believe that, should appellant be allowed to continue his medical practice pending this appeal, there is substantial risk that other violations may occur involving serious and irremediable harm to those affected by appellant’s conduct and decisions as a physician. The Department has clearly demonstrated that this is a case in which a stay should be withheld.
Accordingly, appellant’s application for stay or supersedeas of the Board’s final order pending the instant appeal is denied.
SMITH, C.J., and BOOTH, J., concur.

. This was A.L.’s second abortion.

. Section 390.001(2) provides:
(2) TERMINATION IN LAST TRIMESTER; WHEN ALLOWED. — No termination of pregnancy shall be performed on any human being in the last trimester of pregnancy unless: a) Two physicians certify in writing to the fact that, to a reasonable degree of medical probability, the termination of pregnancy is necessary to save the life or preserve the health of the pregnant woman; or (b) The physician certifies in writing to the medical necessity for legitimate emergency medical procedures for termination of pregnancy in the last trimester, and another physician is not available for consultation.