HANZMAN, MICHAEL, Associate Judge.
Appellant, Symone Maxwell, was charged by information with neglect of an elderly and/or disabled adult, a crime defined as:
A caregiver’s failure or omission to provide an elderly person or disabled adult with the care, supervision, and services necessary to maintain the elderly person’s or disabled adult’s physical and mental health, including, but not limited to, food, nutrition, clothing, shelter, supervision, medicine, and medical services that a prudent person would consider essential for the well-being of the elderly person or disabled adult....
§ 825.102(3)(a)(l), Fla. Stat. (2008). Appellant was found guilty as charged and sentenced to five years in prison. She asserts that the trial court erred by denying her motion for acquittal, claiming that the evidence presented was legally insufficient to prove the charged offense. See Span v. State, 732 So.2d 1196, 1197 (Fla. 4th DCA 1999). Our standard of review is de novo, see State v. Williams, 742 So.2d 509, 511 (Fla. 1st DCA 1999), as we “determine sufficiency as a matter of law.” Tibbs v. State, 397 So.2d 1120, 1123 n. 10 (Fla.1981).
For reasons explained below we conclude that Appellant’s conduct, though possibly criminal, was not proscribed by the statute under which she was charged when construed most favorably to the accused, a construction we are obligated to adopt pursuant to the “Rule of Lenity.” See § 775.021(1), Fla. Stat. (2008) (criminal statutes “shall be strictly construed; when the language is susceptible of differing constructions, it shall be construed most favorably to the accused.”) McLaughlin *960 v. State, 721 So.2d 1170, 1172 (Fla.1998) (“[I]t is a well-established canon of construction that words in a penal statute must be strictly construed” (citation omitted)); Wallace v. State, 860 So.2d 494, 497 (Fla. 4th DCA 2003) (through § 775.021(a) “[t]he Legislature committed itself to the “Rule of Lenity” in the construction of criminal statutes-”). We therefore reverse Appellant’s conviction.
Appellant was the nighttime caretaker for ninety-one-year-old Nettie Stewart (“Nettie”). The State alleged that Appellant regularly gave Nettie Ambien — a controlled substance she had not been prescribed — so she would “pass out,” thereby allowing Appellant to entertain male friends. When viewed in the light most favorable to the State, the evidence, though clearly conflicting, was sufficient for the jury to conclude that over an approximate six-month period Appellant, in fact, gave Nettie the non-prescribed medication. The question therefore is not whether the evidence was sufficient to prove that Appellant engaged in the conduct she was accused of, it is whether that conduct — the affirmative act of administering this medication — constituted “neglect” as defined by section 825.102(3)(a)l.
In answering this question we are mindful that our task is not to determine legislative intent with precision. Rather, we are charged with the duty of deciding whether section 825.102(3)(a)l is “susceptible of differing constructions” and, if so, whether application of the one most favorable to Appellant leads us to conclude that her conduct is not criminalized by the statute. “[Statutes creating and determining crimes cannot be extended by construction or interpretation to punish an act, however wrongful, unless clearly within the intent and terms of the statute.” Hutchinson v. State, 315 So.2d 546, 547 (Fla. 2d DCA 1975). This principle “rests on the due process requirement that criminal statutes must say with some precision exactly what is prohibited.” Perkins v. State, 576 So.2d 1310, 1312 (Fla.1991).
We begin our analysis by pointing out that section 825.102(3)(a) — the neglect provision — is part of Chapter 825, titled “Abuse, Neglect and Exploitation of Elderly and Disabled Adults.” As the title suggests, this Chapter criminalizes different types of behavior. Section 825.102(1) makes it a third degree felony to “abuse” a disabled or elderly person; section 825.102(3) criminalizes “neglect” of an elderly or disabled adult; section 825.1025 is aimed at lewd and lascivious offenses committed in the presence of a disabled or elderly person; and section 825.103 is directed at “exploitation.” Each statute specifically defines the conduct criminalized, and no provision refers to, or incorporates, definitions contained within another. Each definition is free standing and self-contained.
The first substantive provision — section 825.102(1) — criminalizes “abuse,” defined to include, among other things, any “intentional act” that could reasonably be expected to result in physical or psychological injury to an elderly person or disabled adult.” § 825.101(l)(b), Fla. Stat. (2008). Subsection (3) of the statute goes on to address the crime of “neglect” which, as we pointed out earlier, is defined as a caregiver’s “failure” or “omission” to provide care ... necessary to maintain the elderly person’s ... physical and mental health, including, but not limited to, food, nutrition, clothing, shelter, supervision, medicine, and medical services that a prudent person would consider essential for the well-being of the elderly person .... ” § 825.102(3)(a)l, Fla. Stat. (2008). A holistic reading of section 825.102 therefore suggests that subsection (1) covers affirmative acts, and subsection (3) covers “failures” and “omissions,” thereby ensuring *961 that both “acts” and “omissions” that could reasonably be expected to harm an elderly or disabled adult are subject to prosecution.
A careful examination of the “neglect” subsection in isolation reinforces this view. First, the word “failure,” as defined and commonly understood, encompasses a “deficiency,” a “cessation of supply,” an “omission” or “non-performance.” Webster’s Encyclopedic Dictionary, 315 (1980). Similarly, to “omit” is defined as to “neglect,” “disregard,” “[t]o pass over,” “to let slip” and to fail “to do something that should have been done.” Id. at 580. The plain and ordinary meaning of these terms suggests that this subsection is intended to capture a caregiver’s inaction. See Gyongyosi v. Miller, 80 So.3d 1070, 1075 (Fla. 4th DCA 2012) (when a term in a statute is not defined, courts must look to its plain and ordinary meaning, which can be discerned from a dictionary).
A contextual reading of this provision further suggests that it is intended to criminalize only failures or omissions, as it clearly contemplates the withholding of necessities (i.e., food, clothing, shelter and medicine) “essential” to the elderly person’s well-being. In other words, it criminalizes depriving elderly or disabled persons of items critical to their health and sustenance. But unlike the “abuse” provision subsection (3) does not expressly criminalize affirmative acts. And since affirmative acts are in fact covered by the “abuse” provision, we may infer that they are not included within the scope of the “neglect” provision. See, e.g., Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997) (a familiar principal of statutory construction is that a negative inference may be drawn from the exclusion of language from one statutory provision that is included in other provisions of the same statute.) See also, Russello v. United States. 464 U.S. 16, 23, 104 S.Ct. 296. 78 L.Ed.2d 17 (1983) (“[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.”).
We recognize that another interpretation is also reasonable, as one surely could argue that an affirmative act — such as administering non-prescribed medication— which could reasonably result in harm, is ipso facto a “failure” to provide “care.” But one also could argue with equal — if not greater force — that section 825.102(3)(a)l criminalizes only a “failure” or “omission” to deliver necessities; in other words, deprivation. Because both of these competing interpretations are plausible, and persons of reasonable intelligence could differ on which was intended, the statute is at the very least ambiguous and “must be strictly construed most favorably to the accused.” Polite v. State, 973 So.2d 1107, 1112 (Fla.2007).
As we said earlier, our task is not to find which of these reasonable constructions was in fact intended by the Legislature. Our role is simply to determine whether the statute is susceptible to a construction which would place Appellant’s conduct beyond its reach, thereby implicating the Rule of Lenity. See § 775.021(1), Fla. Stat. (2008). We hold that it is.
The trial court’s judgment of conviction is reversed.
GROSS and DAMOORGIAN, JJ., concur.