KLINGENSMITH, J.
Appellants/defendants, OB/GYN Specialists of the Palm Beaches and Marie Morel, M.D., appeal a final judgment awarding appellees/plaintiffs $2.5 million in damages following a jury trial in a medical malpractice action. They contend that the trial court committed reversible error by precluding them from presenting argument and evidence that third trimester abortions are generally illegal in the state of Florida. In support, they claim this information was directly relevant to whether they fell below the standard of care and deprived plaintiffs of the opportunity to obtain an abortion. We agree that the trial court erred in denying the defense *1086 the opportunity to argue the application of this law and reverse for a new trial on the issues of liability and causation only.
Plaintiffs are the parents of a child born with significant birth defects. During her pregnancy, the mother suffered from episodes of bleeding and was referred to the hospital for ultrasounds. At the first ultrasound on June 4, 2008, the position of the fetus allowed for only limited views of all four extremities. As such, the ultrasound report noted the anatomy appeared normal, with the qualification that the view was limited due to fetal lie. However, the report noted other abnormalities, prompting the mother’s referral to genetic counseling and an additional, more detailed, ultrasound known as a Level II ultrasound.
At the genetic counseling session, plaintiffs were informed about the significance of the abnormalities seen on the prior ultrasound and presented with the option of undergoing amniocentesis to screen for genetic abnormalities. The mother declined the amniocentesis procedure, but returned on June 30, 2008, for the Level II ultrasound as recommended.
The Level II ultrasound report stated that the views of the upper extremities were limited, the hands of the fetus were not visible, and the position of the fetus’s feet looked normal. The report also noted that there were “4 limbs.” The impression from the testing indicated that “[t]he anatomy seen on the Level II Ultrasound appears normal. Fetal growth is appropriate. Limited upper extreme [sic], nose, lips.” The mother testified that during this visit she was told that everything was “perfect.”
However, when the mother gave birth on October 15, 2008, she learned for the first time that the baby had no hands, only one leg, and a fraction of a foot attached to the hip on the other leg. Plaintiffs subsequently filed suit against a number of medical providers involved in the mother’s prenatal care. The allegation made against Dr. Morel and her employer, OB/GYN Specialists, was that Dr. Morel fell below the standard of care by failing to advise plaintiffs in a timely manner that the fetus had limb defects, thereby preventing them from making an informed decision as to whether they should terminate the pregnancy.
Prior to trial, defendants sought to preclude plaintiffs from presenting any evidence or argument that the Level II ultrasound caused any damages. The defendants cited section 390.0111, Florida Statutes, which, in pertinent part, provides:
(1) TERMINATION IN THIRD TRIMESTER; WHEN ALLOWED.— No termination of pregnancy shall be performed on any human being in the third trimester of pregnancy unless:
(a) Two physicians certify in writing to the fact that, to a reasonable degree of medical probability, the termination of pregnancy is necessary to save the life or preserve the health of the pregnant woman; or
(b) The physician certifies in writing to the medical necessity for legitimate emergency medical procedures for termination of pregnancy in the third trimester, and another physician is not available for consultation.
§ 390.0111(1), Fla. Stat. (2008) (emphasis added). Defendants asserted that using the gestational age[1] to calculate the weeks of the mother’s pregnancy, the Level II ultrasound was performed one day into the *1087 mother’s third trimester of pregnancy. Therefore, they argued that even if the Level II ultrasound had been reported accurately, the mother could not have obtained a lawful abortion in Florida. Plaintiffs, however, represented that using the date of conception, the mother was not in her third trimester when the Level II ultrasound was performed.
The trial court ruled that any reference or evidence regarding Florida’s prohibition against third trimester abortions under section 390.0111, as applied to the Level II ultrasound,[2] was irrelevant. As the basis for its ruling, the court concluded that: 1) the mother was not in the third trimester of pregnancy, based on counsel’s representation regarding the date of conception; 2) admitting evidence of the statute would create a “trial within a trial” regarding whether any exceptions to the statute applied; and 3) the case did not involve a claim that defendants should have performed or recommended termination of the pregnancy.
At trial, plaintiffs’ medical expert testified that the ultrasound performed on June 4 fell below the standard of care, was reported inaccurately, and had a negative effect on future ultrasounds. He testified that the June 30 Level II ultrasound was also incorrectly reported. The mother testified that she would have undergone an abortion had she known of the birth defects.
At the end of plaintiffs’ case, defendants moved for directed verdict, once again arguing that any alleged acts of negligence occurring in the third trimester, including the alleged misreading of the Level II ultrasound, could not be the legal cause of any damage to plaintiffs because the mother could not have legally terminated her pregnancy at that point in time. The trial court denied the motion, reasoning that the mother could have obtained a legal abortion in another state. Following the adverse jury verdict and final judgment ultimately rendered against the defendants, this timely appeal was taken.
On appeal, defendants assert that the trial court incorrectly ruled section 390.0111 was irrelevant. They maintain that the mother could not have obtained an abortion in Florida as of the date of the Level II ultrasound, arguing that the term “third trimester” as used in section 390.0111, should be calculated using the gestational age. We agree.
Plaintiffs’ suit was based on the wrongful birth of their child. “ “Wrongful birth’ is that species of medical malpractice in which parents give birth to an impaired or deformed child and allege that negligent treatment or advice deprived them of the opportunity to avoid conception or terminate the pregnancy.” Kush v. Lloyd, 616 So.2d 415, 417 n. 2 (Fla.1992). “Causation can be shown if the plaintiff can prove that she would have obtained an abortion if the doctor had not been negligent.” Campbell v. United States, 795 F.Supp. 1118, 1124 (N.D.Ga.1990); accord Keel v. Banach, 624 So.2d 1022, 1027 (Ala.1993). Therefore, a plaintiffs ability to medically, legally, and logistically undergo such a procedure is clearly relevant to the issue of causation. See, e.g., Davis v. Columbia Hosp. for Women Med. Ctr., Inc., No. 91-16305, 1996 WL 33649490, at *11-12 (D.C.Super.Ct. June 24, 1996) (in wrongful birth action, defendants were free to present evidence that a viable fetus existed on the relevant date and that there was no basis to terminate the mother’s pregnancy at that time because of threats to her life or health). Accordingly, whether the mother could have lawfully obtained an abortion at the *1088 time the Level II ultrasound was performed was certainly relevant to establish causation, or lack thereof.
Chapter 390’s definition section defines “third trimester” as “the weeks of pregnancy after the 24th week of pregnancy.” § 390.011(8), Fla. Stat. (2008). The term “pregnancy” is not defined in Chapter 390. Likewise there are no statutory provisions that define how “weeks of pregnancy” should be calculated. Courts generally interpret the words of a statute by giving them their plain and ordinary meaning. Maxwell v. State, 110 So.3d 958, 961 (Fla. 4th DCA 2013). However, such a construction must be avoided if it leads to an unreasonable result or a result clearly contrary to legislative intent. Daniels v. Fla. Dep’t of Health, 898 So.2d 61, 64 (Fla.2005). Additionally, in considering the meaning of particular words and phrases, courts must also distinguish between terms of art- that may have specialized meanings and other words that are ordinarily given a dictionary definition. See, e.g., Vargas v. Enter. Leasing Co., 993 So.2d 614, 618 (Fla. 4th DCA 2008). In the context of the statute under review, “third trimester” is a term that has a particular medical meaning designed to give effect to its application.
To help decipher the phrase “weeks of pregnancy,” for the purpose of determining when the second trimester ends and the third trimester begins, the portion of the Florida Administrative Code pertaining to Medical Screening and Evaluation of Patients Receiving Second Trimester Abortions is instructive. It provides, in pertinent part:
(1) Each abortion clinic that provides second trimester abortions shall formulate and adhere to written patient care policies and procedures designed to ensure professional and safe care for patients undergoing second trimester abortions and shall maintain a medical record for each such patient that records history, care and services. Any abortion clinic that performs second trimester abortions which is in operation at the time of adoption of this rule shall be given six (6) months within which to comply with these patient care policies and procedures for patients undergoing second trimester abortions, to include but not limited to the following:
(a) Admission criteria and procedures;
(b) Identification in the medical record of physician(s) and nurse(s) involved in providing the services offered for patients undergoing second trimester abortions;
(c) Specific details regarding the preoperative procedures performed, to include:
1. History and physical examination, to include verification of pregnancy, estimation of gestational age, identification of any preexisting conditions or complications; including allergies to medications, antiseptic solutions, or latex; and a complete obstetric and gynecological history.
2. Special examinations, lab procedures, and/or consultations required, to include ultrasonography to confirm gestational age and a physical examination including a bi-manual examination estimating uterine size and palpation of the adnexa. The physician shall keep original prints of each ultrasound examination of a patient in the patient’s medical history file. For an abortion in which an ultrasound examination is not performed before the abortion procedure, urine or blood tests for pregnancy shall be performed before the abortion procedure.
*1089 Fla. Admin. Code. R. 59A-9.025 (emphasis added). Therefore, to determine whether an abortion can legally be performed before the end of the second trimester, the “gestational age” of the fetus is relevant to the inquiry and must be documented in the patient’s medical records.
Additional guidance can be gleaned from the Supreme Court cases creating and interpreting the trimester framework upon which the Florida law is based. This framework was first enunciated in Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973). There, the Supreme Court explained that “[viability is usually placed at about seven months (28 weeks) but may occur earlier, even at 24 weeks.” Id. at 160, 93 S.Ct. 705. “The fourteenth edition of L. Heilman & J. Pritchard, Williams Obstetrics, on which the Court relied in Roe for its understanding of [fetal] viability, stated that ‘[attainment of a [fetal] weight of 1,000 g [or a fetal age of approximately 28 weeks gestation] is ... widely used as the criterion of viability.’ ” City of Akron v. Akron Ctr. for Reprod. Health, Inc., 462 U.S. 416, 457, 103 S.Ct. 2481, 76 L.Ed.2d 687 (1983) (O’Connor, J., dissenting) (emphasis added). Thus, it appears that the Supreme Court in Roe also measured the weeks of pregnancy and trimesters by the fetus’s gestational age. Id. Consequently, we hold that the term “third trimester” as used section 390.0111 must also be interpreted using gestational age in light of Roe’s trimester viability analysis.
Although plaintiffs suggest that this court calculate “weeks of pregnancy” as used in section 390.011(8)’s definition of “third trimester” from the date of conception, in doing so they also concede that the fetus’s date of conception in this case is unknown, and, in most cases, cannot be reliably ascertained. In fact, nowhere in the administrative code regulating abortion screening and patient evaluation is there any requirement that a physician take steps to estimate or confirm the date of conception, only gestational age. Moreover, physicians may be disciplined for performing a third trimester abortion that does not comply with the statutory regulations governing such a procedure. Pendergraft v. Dep’t of Health, 19 So.3d 392 (Fla. 5th DCA 2009). In one case, Ticktin v. Department of Professional Regulation, 532 So.2d 47 (Fla. 1st DCA 1988), the First District upheld a ruling by the State Board of Medicine revoking a doctor’s license after he miscalculated the gestational age of the fetus and performed an abortion during the last trimester of the patient’s pregnancy. To adopt plaintiffs’ view that “third trimester” as used in section 390.0111 should be determined using the date of conception would hereafter require clinicians to calculate the “weeks of pregnancy” based on indiscernible facts and make estimates of fetal age in a manner contrary to established medical practice, all in order to render medical care and treatment in conformity with Florida law.[3]
*1090 Not surprisingly, all of the medical experts who testified at trial in this case agreed that in order to determine the weeks of pregnancy at any given point in time, physicians customarily and routinely use the “gestational age” method that is consistent with the standard of care. Using this calculation, record evidence in this case showed that the gestational age of the mother’s fetus when the Level II ultrasound was performed on June 30 was twenty-four weeks and one day — just past the statutory deadline for when a lawful abortion could have been obtained in Florida.
Even if we were to agree that the statute should be interpreted to measure pregnancy from the alleged time of conception, thereby allowing the mother nearly two weeks after the June 30 Level II ultrasound to obtain a lawful abortion under Florida law, the existence of section 390.0111 would still be relevant to whether the mother could have logistically obtained an abortion in Florida before the statutory deadline. For example, in Hall v. Dartmouth Hitchcock Medical Center, 153 N.H. 388, 899 A.2d 240 (2006), the court held that the defendant’s disclosure to the parents of the possibility that the fetus would have serious birth defects was timely, even though it was made late in the second trimester (when the mother was between twenty-three and twenty-four weeks of gestation), because the parents failed to offer any expert evidence that the defendant could have disclosed the information concerning the increased possibility of birth defects earlier, and also failed to establish that the mother could not have terminated her pregnancy within the period of time remaining in her second trimester. The court went on to explain that in determining whether a disclosure of an increased risk of birth defects was “timely” in a wrongful birth action, a fact finder should be permitted to consider, among other things: expert testimony concerning the proximity of the disclosure to the end of the plaintiffs second trimester; expert testimony about whether the medical providers could have earlier disclosed information concerning the increased possibility of birth defects; the practicability of scheduling an abortion to occur prior to the expiration of the second trimester, taking into account whether a medical provider reasonably would have performed the procedure within such a timeframe; the availability of third trimester abortions in other jurisdictions; the requirements for obtaining a third trimester abortion in other jurisdictions; and whether the plaintiffs clinical situation, at the time of the disclosure, would have met such requirements. Id. at 248-49.
Additionally, other factors relating to the practicability of obtaining an abortion prior to the end of the second trimester may also be relevant in any given case, including but not limited to the credibility of the mother’s claim she would have sought to terminate her pregnancy, the relative ease or difficulty in locating a provider willing to perform the required procedure, and the mother’s ability to travel within the applicable window of opportunity to the location where the procedure would be performed.[4]
*1091 Plaintiffs also contend that had the Level II ultrasound been properly interpreted, the mother could have traveled to another state to obtain an abortion at her stage of pregnancy, or perhaps could have secured a third trimester abortion in Florida or elsewhere under an applicable statutory exception. Here, the trial court made a legal determination when denying the defense’s motion for directed verdict that the mother could have obtained an abortion in another state. However, no cases have been presented to this court holding that a physician has a duty to provide information to a patient about whether she could legally undergo a third trimester abortion in another state in which that physician is not licensed. As such, we decline to establish such a duty for the first time here.[5]
Our holding in this case is consistent with the well-settled principle that a party is entitled to have the trial court instruct the jury on its theory of the case when the evidence, even though controverted, supports that theory. Mathieu v. Schnitzer, 559 So.2d 1244, 1245-46 (Fla. 4th DCA 1990); L.K. v. Water’s Edge Ass’n, 582 So.2d 1097, 1098 (Fla. 3d DCA 1988). Other states considering the issue presented herein have likewise determined that a specific jury instruction on the state’s law on. abortions should be given at the conclusion of trial. See, e.g., Peled v. Bohn, No. B193225, 2007 WL 3026532, at *11 (Cal.Ct. App. Oct. 18, 2007) (in wrongful life action, the trial court did not commit error in instructing the jury as follows: “A woman cannot have an abortion in California where the fetus is viable and the pregnancy does not pose a risk to the life or health of a pregnant woman. A fetus is generally considered viable at and after 24 weeks of gestation. A physician has no duty to disclose information regarding treatment that is not legally available to a patient in California.”).
While evidence of the availability of abortions in other states and the possibility that the mother might have been able to obtain a third trimester abortion in Florida or elsewhere may also be relevant to a jury on the issue of causation, those considerations do not constitute valid reasons for excluding evidence that third trimester abortions are generally illegal in Florida. In light of the trial court’s failure to permit the jury to consider the relevance of section 390.0111 to the plaintiffs’ specific situation, leading to the exclusion of other relevant evidence on that factual issue, a new trial on the issue of liability and causation is required.

Reversed and Remanded for a New Trial on Liability and Causation.

DAMOORGIAN, C.J., concurs.
TAYLOR, J., dissents with opinion.

. This gestational age calculation uses the date of the mother's last menstrual period, not the point of conception, to measure the fetus’s development through the trimester stages and determine the projected due date, also known as the estimated date of confinement.

. The trial court granted the defendants’ motion in limine as to additional ultrasounds performed in August and September 2008, but denied it as to the June 30 Level II ultrasound.

. We recognize, as have other courts, that there are different methods of calculating the duration of pregnancy, depending on the professionals involved and their field of expertise. The average duration of pregnancy is about 280 days. Estimation of the date on which delivery should occur is based on the first day of the last menstrual period. Taber’s Cy-clopedic Medical Dictionary 1730 (19th ed. 2001). However, depending on the calculation used, there may be more than a two-week deviation either way. City of Akron, 462 U.S. at 432 n. 15, 103 S.Ct. 2481. "Clinicians use gestational age, or menstrual age, calculated from the first day of the last menstrual period to identify events in pregnancy, whereas embryologists and other biologists more often use ovulatory age, or fertilization age, which is typically 2 weeks shorter.” Driessen v. Freborg, 431 F.Supp. 1191, 1194-95 (D.N.D.1977).
*1090 Because this case concerns the standard of care for clinicians, their usual and customary method of calculation, consistent with their standard of care, is the one relevant to our inquiry.

. It should also be noted that the mere fact that a presentation of these issues may require a fact finder to conduct a “trial within a trial” is not a proper basis for denying parties the ability to present evidence on relevant issues pertaining to their theory of the case. Tarleton v. Arnstein & Lehr, 719 So.2d 325 (Fla. 4th DCA 1998) ("trial within a trial” required to determine causation in a legal malpractice case).

. There was no evidence presented at trial that the mother met any applicable medical criteria that would have permitted the procedure to be performed under a Florida exception, or performed elsewhere. Regardless, whether or not an abortion was indeed available to the mother in another state was a question of fact for resolution by the jury, not the court.